[No. 29702.   Department One.   November 2, 1945.]

WILBERT H. WHITE, *Appellant*, v. MARTHA WHITE, *Respondent.*[1]

[1]Reported in 163 P. (2d) 137.

*Marion Garland, Sr.,* and *Marion Garland, Jr.,* for appellant.

*Merrill Wallace* and *Curtis H. Coons,* for respondent.

MALLERY, J.—Plaintiff secured a default order of divorce against defendant. Service of summons and complaint was by publication. He was awarded custody of their infant child and all of the community property. After the time for an appeal had elapsed, but before the order became final, defendant petitioned the court for an order modifying the interlocutory order. The court entered an order vacating the original interlocutory order for failure to secure proper service and entered a new one which granted to the defendant the custody of the child, a lien against the community real property equal to half of its value, and forty dollars per month for the support of the child. Plaintiff's motion for a new trial was later denied and plaintiff appeals, assigning as error the setting aside of the original order, and the refusal to grant a new trial.

It appears that the respondent took the baby of the parties herein and left the home in Bremerton on May 15, 1944. This was the third such occasion. She went to Bellingham, Washington, where she remained until the latter part of June, 1944. She then proceeded to San Bernardino, California, leaving there sometime in October for Portland, Oregon, and finally returning to Bellingham in November, 1944.

She did not let her husband know of her whereabouts. Indeed, it must be inferred that she concealed them from him. The respondent in cross-examination testified as follows:

"Q. Where did you go as soon as you left your husband? A. With my oldest brother. (In Bellingham) Q. And you

didn't write to the family? A. If I wrote, I wrote through someone else. Q. You didn't want your family to know where you were? A. I didn't care if they knew *but I didn't want someone else to find out.* Q. Did your family communicate with you at all? A. No." (Italics ours.) (Parenthesis supplied.)

Again on recross-examination:

"Q. During the time you were in Bellingham, that was merely for the purpose of throwing your husband off your trail? Is that the only reason you stayed up there? A. No. Q. Why did you stay up there? Why didn't you go home to your folks? A. Because it was too close to his folks. Q. You didn't want him or his folks to know where you were? A. I didn't particularly care to have them know. THE COURT: The reason you left was primarily because they threatened to take your baby? THE WITNESS: Yes. THE COURT: You were foolish enough to believe that they could. You left with the baby and hid didn't you? *You intended to hide from them?* THE WITNESS: Yes. THE COURT: So you did not want them to know? THE WITNESS: No, I didn't care to have them know anything. Q. So you went to live in Bellingham? A. Yes." (Italics ours.)

After the respondent left home, the appellant made the following search for her: (1) Inquired at the home of respondent's best friend and was there told that respondent had gone to the home of respondent's sister in Seattle. (2) Visited the sister in Seattle who stated that the respondent had indeed been there, and that she believed that respondent had gone to Idaho to visit a friend. (3) Appellant then contacted Seattle police and also hired a private detective to make a search for the respondent in Idaho. (4) Appellant's mother also contacted a man in Idaho to make a search for the baby. None of these attempts were fruitful.

On May 23, 1944, appellant verified his complaint for divorce. On the basis of his affidavit and a not found return by the sheriff, he secured service of the summons and complaint by publication.

▮ Rem. Rev. Stat., § 228 [P. P. C. § 2-19], provides for service by publication:

" . . . 2. When the defendant, being a resident of this

state has departed therefrom with intent to defraud his creditors, or to avoid the service of a summons, or *keeps himself concealed therein with like intent;* . . ." (Italics ours.)

In *Chase v. Carney,* 199 Wash. 99, 90 P. (2d) 286, the court stated:

"Rem. Rev. Stat., § 228 [P. C. § 8441], provides that, when a defendant cannot be found within the state, of which the return of the sheriff of the county in which the action is brought, that the defendant cannot be found in the county, is *prima facie* evidence, and upon the filing of an affidavit of the plaintiff, his agent or attorney, with the clerk of the court, stating that he believes that the defendant is not a resident of the state or cannot be found therein, service may be made by publication of the summons. While there is nothing in this section that specifically requires inquiry or search in order to furnish the basis for making an affidavit for publication, this court has adopted the rule that a reasonable search is necessary. *Warner v. Miner,* 41 Wash. 98, 82 Pac. 1033; *Olson v. Johns,* 56 Wash. 12, 104 Pac. 1116; *Schmelling v. Hoffman,* 111 Wash. 408, 191 Pac. 618."

We hold that the search in this case was reasonable, and that the service was therefore good.

On December 11, 1944, the respondent filed her petition to modify the interlocutory decree of divorce, praying for custody of the child and a division of the community property. This court said in *Ford v. Ford,* 22 Wn. (2d) 303, 155 P. (2d) 485:

"The court's power over property rights of parties to a divorce action derives from Rem. Rev. Stat. (Sup.), § 988 [P. C. § 7507], which provides:

" 'If . . . the court determines that either party, or both, is entitled to a divorce an interlocutory order must be entered accordingly . . .; which order shall also make all necessary provisions as to alimony, costs, care, custody, support and education of children and custody, management and division of property, *which order* . . . *as to the custody, management and division of property shall be final and conclusive upon the parties subject only to the right of appeal;* . . .' (Italics ours.)

"We think the powers of the court with respect 'to the custody, management and division of property' are too ex-

plicitly defined by the statute to admit of construction. Plainly, the court has no power to reserve the right to modify the interlocutory order in that respect. By the express terms of the statute, the order must be *final—'Subject only to the right of appeal.'* *Brown v. Brown,* 192 Wash. 333, 73 P. (2d) 795."

■ Thus, we see that the court had no jurisdiction to modify the interlocutory order as to the disposition of the community property, since the time for appeal had elapsed. The court did not modify the order but did quash the service of summons and complaint on the ground that the search was not reasonable, vacated the interlocutory order, and entered a new order dividing the property and gave respondent custody of the child.

Having held that the service was good, we must further hold that the court erred in vacating the order as to the disposition of the property. Hence, we direct that the order as to the disposition of the property be reinstated.

As to the modification of the interlocutory order in regard to the custody and support of the child, we are confronted with a case of first impression.

■ The rule is that petition to modify in that regard must show a change of conditions and circumstances since the entry of the interlocutory order. See *Beers v. Beers,* 74 Wash. 458, 133 Pac. 605; *Koontz v. Koontz,* 25 Wash. 336, 65 Pac. 546; *Irving v. Irving,* 26 Wash. 122, 66 Pac. 123; *Kane v. Miller,* 40 Wash. 125, 82 Pac. 177; *Earling v. Earling,* 117 Wash. 584, 201 Pac. 908.

"A decree made at the time of the divorce cannot anticipate the changes which may occur in the condition of the parents or in their habits, character, and fitness to have the custody and care of the children. The parent having the custody of the children may marry, may become poor and unable properly to maintain and educate them, or may become vicious and morally unfit to have the control of children. These changes and other sufficient causes may make it necessary for the good of the children that their custody be changed. . . . Moreover, a delinquent parent may in the course of time become entirely fit to have and retain the custody of his or her child. . . . Accordingly, it has been held that orders in divorce proceedings as to the cus-

tody of minor children are not final in the sense that they are not subject to change, but are, in their nature, interlocutory and subject to modification at any future time during the lives of the parents and the minority of the children, upon good cause shown. A decree fixing the custody of a child is, however, final on the conditions then existing and should not be changed afterward unless on altered conditions since the decree or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child." 17 Am. Jur. 518, § 684.

However, this being a default order, no finding was made as to the fitness of either parent to have custody of the child. The best interest of the child being the paramount concern of the court, we hold that in such a case, a petition to modify will lie without allegations of change of conditions and circumstances, since it constitutes the court's first opportunity to pass upon adequately presented evidence. The court's action as to the care, custody, and support of the child is affirmed.

The original order will be reinstated as to the disposition of the property. It will, however, be modified in accordance with the last order of the trial court as to the care and custody of the child.

BEALS, C. J., MILLARD, STEINERT, and JEFFERS, JJ., concur.