[No. 30437.   Department One.   June 17, 1948.]

HORACE VAN TINKER, *Appellant,* v. MARION VAN TINKER, *Respondent.*[1]

*James G. Smith,* for appellant.

*Alfred. McBee,* for respondent.

SIMPSON, J.—The present appeal is prosecuted to review an order of the superior court of Skagit county denying a petition to modify a divorce decree.   The interlocutory order confirmed by the decree, among other things provided that:

Defendant should have the absolute care, custody, and control of John Van Tinker, the minor son of plaintiff and defendant, subject to plaintiff's right of visitation at reasonable times.   Plaintiff was required to pay premiums on four

[1]Reported in 195 P. (2d) 96.

insurance policies, totaling eleven thousand dollars, payable to defendant as beneficiary and the minor son as contingent beneficiary. Plaintiff was required to pay for the education and maintenance of his son the sum of one hundred dollars per month, and alimony to defendant in the amount of fifty dollars per month. In addition, plaintiff was commanded to pay for his son's benefit, one half of any amount over three hundred fifty dollars per month received by him as salary. The decree of divorce was entered November 20, 1943.

The petition to modify the decree sought relief from the accumulation clause just mentioned. After a trial on the merits, the court denied the petition.

Plaintiff, in his appeal to this court, makes assignments of error which call in question the order made by the trial court.

The facts relating to the condition of the interested parties are these: At the time the interlocutory order was entered, appellant was receiving a salary of three hundred dollars per month. At the time of the hearing upon the petition to modify the decree, plaintiff's salary was four hundred fifty dollars per month. The son of the parties to this action, now of the age of nineteen years, is afflicted with spastic paralysis, or cerebral palsy. This condition has existed since birth. The ailment affects the lower portion of his brain, causing a lack of muscular control. He can walk but little. Help is required when he gets in or out of the bathtub, and he requires almost constant watching. He is unable to express himself to any great extent and has lost the vision of one eye, and the other eye is farsighted. The boy has always been subject to convulsions of a violent and serious nature. No warning comes to his caretaker of these convulsions, which last from fifteen to twenty minutes, and, for a long period of time thereafter, he is unable to complete a recovery. Recently, he has been going to a special school which requires the payment of tuition. At present, respondent and her son occupy a house furnished free of rent by respondent's sister. Since October, 1943, respondent has used almost her entire time

in caring for her son and has been unable to earn or save any money. She depends entirely upon the sums paid by appellant, and the charity of her sister.

Appellant's evidence shows that, at the present time, his salary is $450 per month, from which there is deducted $4.50 for social security, $46.60 withholding tax, $14 retirement insurance, $6.20 group insurance and medical aid, leaving $378.70 net. In May, 1943, he received $248.60 each month, from which he was compelled to pay the following: insurance, $6, and income taxes, $12.40, which increased to $44.40 in July, 1943. In March, 1944, his income tax increased to $52.40 per month.

Appellant remarried in 1944. In July, 1946, he was given the management of a bank in the city of Bellingham. One of the requirements of the position imposed by the bank was that appellant must maintain a home and do certain required entertainment, and belong to social clubs. It requires two hundred or two hundred fifty dollars each year more than he is now receiving to meet the bank's demands. Appellant's present wife is working and contributed to the community funds in 1946 about eight hundred fifty dollars. Since her marriage, she has expended from funds she had at that time about one thousand dollars for the benefit of the community. At the time of the trial, she was earning only about one hundred eighty dollars per month.

Appellant contends that he cannot retain his present position, pay the increased allotment for the care of his son, and maintain his home.

The first question is whether the changed condition of appellant was such as to authorize a court to entertain a petition.

Rem. Rev. Stat., § 988 [P.P.C. § 23-15], as amended by Laws of 1947, chapter 161, p. 731 (Rem. Supp. 1947, § 988), provides that divorce decrees

". . . may be modified, altered or revised by the court from time to time on a showing that the conditions rendering it necessary have changed or no longer exist."

"The rule is that petition to modify in that regard must

show a change of conditions and circumstances since the entry of the interlocutory order." *White v. White,* 24 Wn. (2d) 52, 163 P. (2d) 137.

■ ■ In enacting the statutes above referred to, the legislature certainly contemplated and took cognizance of the well-known fact that conditions may and do change from time to time. Guided thereby, the court may exercise its power to make whatever adjustments may be right and proper in the premises, as viewed in the light of the changed conditions. It could hardly be contemplated that changes could be made from day to day. Conditions are variable, and, when a change is made following a hearing, it seems to us that it should be based upon something more or less permanent or continuous, not merely upon transitory, variable, or temporary conditions. However, any substantial change in the circumstances of one, or both parties, the changing need of the children, the change in the financial or marital conditions of the wife or husband, or the decreased earning powers of the husband, may warrant modification of the award. The one person in the best position to judge of the necessity of a change undoubtedly would be the trial judge. In such cases, the modification of the decree is addressed to the discretion of the trial court and is not as freely interfered with as is a law pronouncement. As was said in *Ostrander v. Ostrander,* 176 Wash. 669, 30 P. (2d) 658, this court will be slow to interfere unless manifest abuse appears. Accord: *Dinesen v. Dinesen,* 29 Wn. (2d) 178, 186 P. (2d) 611.

The trial court had before it a very difficult situation. The husband's financial condition is straitened because of increased deductions of various kinds made from his salary, and he will not be able to maintain his present position unless he can get some aid from his employer. However, his present condition, so far as income tax is concerned, should be greatly alleviated because of the new income tax law. On the other hand, we, as did the trial court, must consider the pitiable condition of the son, and the situation in which the mother has been placed throughout the years. The son cannot be left alone, and his mother

16

has given her entire life, since his birth, to his care. There can be no doubt but that she needs the additional compensation provided for in the decree of divorce. With the high cost of living which she faces, she cannot very well maintain herself and her son unless she has the extra amount provided for in the decree.

We have given careful attention to the evidence in this case, and to the situation of each of the parties, but cannot say that the court abused its discretion in refusing to modify the decree relative to support of the son.

The judgment will be affirmed.

MALLERY, C. J., MILLARD, SCHWELLENBACH, and HILL, JJ., concur.