[No. 46571. En Banc. October 16, 1980.]

*In the Matter of the Marriage of* ELMER TIMMONS, *Respondent, and* WENDY TIMMONS, *Petitioner.*

*Helsell, Fetterman, Martin, Todd & Hokanson,* by *Donald C. Harrison,* for petitioner.

*Jacobs & Jacobs,* by *Tom Jacobs,* for respondent.

UTTER, C.J.—Is a judge in a proceeding to modify an uncontested dissolution decree limited to evidence of postdecree facts showing a change of circumstances since the time of the decree? We conclude that when a dissolution is uncontested, a judge may consider predecree facts. The order in this case, which considered predecree facts is supported by substantial evidence and was therefore properly entered.

Petitioner Wendy Timmons (now Wendy Rolleston) and Elmer Timmons separated in June 1977 after 12 years of marriage. They agreed that their two children, now ages 9 and 6, would remain in the family home with Elmer until Wendy got "back on her feet," and then she "could have them back." After discussing arrangements, Wendy joined in a petition for dissolution which Elmer filed in August 1977. The marriage was dissolved 4 months later, and pursuant to the agreed request in the petition, Wendy was awarded custody of the children with the proviso that she could not take them out of Washington without the court's

permission. The children, however, continued to live with Elmer, and shortly after the dissolution, he remarried.

In February 1978 Wendy asked Elmer to allow the children to come live with her according to their agreement, but she yielded to his request that the children not move until the school year ended. Then, after a weekend visitation in June 1978 Wendy kept the children despite Elmer's opposition.

Wendy met her present husband in the summer of 1978, and petitioned for modification of the dissolution decree to permit her to take the children to Georgia to reside with her and her husband after their marriage. Elmer cross–petitioned for a change of custody.

Trial was held in December 1978. Noting that the dissolution was uncontested, the trial judge ruled that Elmer did not need to show a change of circumstances since the original decree. Over objection by Wendy's counsel, he admitted evidence of events which occurred before entry of the decree. Testimony was heard concerning Wendy's actions and emotional state prior to dissolution. Basing his decision partially on this predecree evidence, the trial judge concluded that modification was necessary to serve the best interests of the children. The court found that Elmer had satisfied two alternate statutory grounds for modifying custody: (1) the living situation of the children with Wendy was detrimental to their health and the harm likely to be caused by a change of custody was outweighed by the advantages, and (2) the children had become integrated into Elmer's family with Wendy's consent. Wendy appealed.

The Court of Appeals held that consideration of facts that arose prior to the decree was proper and that since both of the alternative reasons for decision were supported by the evidence, modification was proper. Wendy petitioned for review on two grounds. She first claims that a postdecree change of circumstances must be shown and that predecree evidence is inadmissible, even when the decree was uncontested. Secondly, she urges that the facts

do not support a finding of detriment to health or integration.

The dissolution act of 1973 provides in pertinent part:

The court shall not modify a prior custody decree unless . it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by the prior decree unless:

(a) The custodian agrees to the modification;

(b) The child has been integrated into the family of the petitioner with the consent of the custodian; or

(c) The child's present environment is detrimental to his physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

RCW 26.09.260(1). Thus, in order to modify a prior custody decree, the judge must find that a "change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child[ren]." These determinations shall be made "upon the basis of facts that have arisen since the prior decree or that were *unknown to the court at the time of the prior decree,* . . ." (Italics ours.) RCW 26.09.260(1).

Petitioner urges that "facts . . . unknown to the court" refers only to facts not presented to the court when a genuine contested hearing took place. Since her dissolution was uncontested, she maintains that only facts which arose since the decree should have been considered and that the trial court erred in admitting predecree facts.

Before the present dissolution act, former RCW 26.08.110 (repealed 1973) provided that custody decrees could be "modified, altered, and revised by the court from time to time as circumstances may require." We held under this statute that res judicata principles generally applied to bar reconsideration of conditions existing at the time of the decree. *Brim v. Struthers,* 44 Wn.2d 833, 835, 271 P.2d 441

(1954). Thus, modification required a change of circumstances since the original decree, and evidence relating to events and conditions prior to the decree was inadmissible. *Holten v. Holten,* 64 Wn.2d 203, 206, 390 P.2d 982 (1964); *see White v. White,* 24 Wn.2d 52, 56, 163 P.2d 137 (1945).

In limiting the scope of inquiry, it was assumed that the court granting the original decree made its decision based on knowledge of all the existing circumstances. *In re Rankin,* 76 Wn.2d 533, 537, 458 P.2d 176 (1969). When a custody decree was entered upon default, therefore, the reasons for the rule did not apply:

> the court has had no opportunity to observe the two contending parents upon the witness stand or to examine the evidence concerning their fitness and concerning the welfare of the child. It must accept the allegations of the petitioner or, at best, the uncross–examined testimony of the petitioner.

*Rankin,* at 536. Thus, a default custody decree could be modified without a showing of changed circumstances and the court could consider facts which existed at the time the original decree was entered. *Rankin,* at 537–38; *see White v. White, supra.*

Petitioner argues that the *Rankin* rule should not apply to uncontested dissolutions under the 1973 act. She distinguishes the *Rankin* decree, which was uncontested because it was by default, from the usual uncontested dissolution today, in which the decree is entered upon a petition which both parties have joined. To allow consideration of pre-decree facts, she contends, would undermine the policy of the present dissolution act that the parties, rather than a judge, can best work out dissolution arrangements.

We conclude that, because of the continuing paramount concern for the best interests of the child, the rationale for the *Rankin* rule equally applies when the parties join in a petition. A couple should not be able to foreclose judicial inquiry into facts which may assist in making the critical determination of how a child's interests would best be

served, by agreeing as to who should receive original custody. Whether the decree is entered upon default, or whether the decree is entered upon an agreed petition after brief questioning of the petitioner, the observations we made in *Rankin* still apply:

> the primary concern of the courts is always the welfare of the child. It would be unrealistic to assume that this concern can be served as well by a court which does not hear evidence and does not have an opportunity to observe both parents as it can by one in which the right of one parent to custody is contested by the other.

*Rankin,* at 537. The *Rankin* rule assures true judicial consideration of all relevant facts concerning the welfare of the children.

Petitioner further asserts that to allow consideration of predecree facts will subject the majority of decrees to virtually de novo hearings as soon as a custody dispute arises, and will thus create a tentativeness that is at odds with the policy of discouraging modification proceedings. However, the statutory preference for custodial continuity remains whether or not predecree facts are considered. The court must still find that modification is "necessary to serve the best interests of the child[ren]," and shall "retain the custodian established by the prior decree" unless agreement, integration, or detriment to health is shown. RCW 26.09-.260(1).

The current statute embodies the policy allowing the modifying court to consider previously undisclosed facts. Unlike the prior statute, RCW 26.09.260 specifically sets forth what facts the court may consider, including facts "unknown to the court."

Our task is to give effect to the intent and purpose of the legislature, as expressed in the statute. *E.g., Strenge v. Clarke,* 89 Wn.2d 23, 29, 569 P.2d 60 (1977). We find an intent to moderate the harshness of res judicata, regardless of whether or not the decree was contested, due to the public interest in the welfare of children. *See* 24 Am. Jur. 2d *Divorce and Separation* § 819 (1966). We therefore hold

that when a dissolution was uncontested, on a subsequent petition to modify, predecree facts are "unknown" within the meaning of the statute and can be considered by the trial court. *Cf. McDaniel v. McDaniel,* 14 Wn. App. 194, 539 P.2d 699 (1975) (facts which petitioner became aware of after entering default stipulation were "unknown").

The statute further requires that a "change has occurred in the circumstances of the child or his custodian . . ." RCW 26.09.260. Principles of statutory construction require that we give effect to all of the language used. *Publishers Forest Prods. Co. v. State,* 81 Wn.2d 814, 505 P.2d 453 (1973). In order to give meaning to the words of the statute allowing consideration of "unknown facts," and give weight to the precedent of *Rankin,* we interpret this section to mean that a change must have occurred from circumstances only as were previously known to the court. *See Boggs v. Boggs,* 65 Ill. App. 3d 965, 383 N.E.2d 9 (1978).

There is no evidence that the court granting the dissolution decree to Elmer and Wendy considered anything other than the agreement of the parties. It was thus proper for the modifying court to hear testimony concerning events and conditions prior to the decree.

Petitioner next argues that the trial court erred in concluding that the children's living situation with her was detrimental to their health under RCW 26.09.260(1).

In matters dealing with the best interests of children, a trial court enjoys the great advantage of personally observing the parties, and we are reluctant to disturb a custody disposition. *Dykes v. Dykes,* 69 Wn.2d 874, 876, 420 P.2d 861 (1966). There is substantial evidence in the record to support the trial judge's determination.

The trial court found that Wendy had exhibited and was exhibiting some instability in that she had been engaged three times and had remarried, all in the year prior to trial, and on at least one occasion had attempted suicide. After observing the parties in court during a 2–day trial, the judge concluded that Wendy's testimony and actions at trial reflected an insecurity which was further evidence of

her instability. Wendy failed to visit a child from a prior marriage, and she and her children were living in overcrowded conditions in Wendy's sister's house. Elmer and his present wife, in contrast, had provided and were providing a stable and loving atmosphere for the children and the children were happier there.

Petitioner does not challenge these findings but argues that the specific incidences noted by the judge are unrelated to any potential harm to the children. We cannot agree. These findings amply support the determination that the criteria of RCW 26.09.260(1)(c) have been met.

Petitioner further claims that the trial court erred in concluding that modification was also warranted under RCW 26.09.260(1)(b) in that the children had become integrated into Elmer's family with her consent.

"Consent" refers to a voluntary acquiescence to surrender of legal custody. It may be shown by evidence of the relinquishing parent's intent, or by the creation of an expectation in the other parent and in the children that a change in physical custody would be permanent. The children's views as to where "home" is, and whether the environment established at each parent's residence is permanent or temporary are significant in determining whether "consent" and "integration" are shown. While time spent with each parent is not determinative, it is a factor.

Petitioner contends that the facts in this case do not establish integration. She maintains that she allowed the children to stay with Elmer only until and so that she could become financially settled, and she points out that the children spent weekends with her. In February 1978 Elmer knew she was ready to have the children, and she permitted them to remain with him only to avoid changing schools. Neither the children nor Elmer, she asserts, could have thought that she did not intend that the children come live with her.

There is a serious question whether there is substantial evidence to support the "integration" required by the statute. However, since we find that the modification order was

properly granted on the ground of detriment to health, that is not determinative.

The modification order is affirmed.

ROSELLINI, STAFFORD, WRIGHT, HICKS, and WILLIAMS, JJ., concur.

DOLLIVER, J. (dissenting)—I agree with the majority that in a custody modification proceeding RCW 26.09.260(1) allows consideration of predecree facts which were unknown to the court at the time of the prior uncontested dissolution. I do not agree, however, with the conclusion of the majority that the predecree facts provide substantial evidence for a change of custody. Therefore, I dissent.

RCW 26.09.260 states the court *shall not* modify a prior custody decree unless "a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the bests interests of the child." Custody shall not be changed unless one of three additional requirements has been met:

(a) The custodian agrees to the modification;

(b) The child has been *integrated* into the family of the petitioner with the *consent* of the custodian; or

(c) The child's *present environment is detrimental to his physical, mental, or emotional health* and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

(Italics mine.) RCW 26.09.260(1).

Clearly, Wendy did not agree to the modification and, therefore, RCW 26.09.260(1)(a) has not been fulfilled. The trial judge held that modification was necessary in the best interests of the children and could be justified under either RCW 26.09.260(1)(b) or (c).

RCW 26.09.260(1)(c) permits modification of custody only if the present environment of the children is detrimental to their physical, mental or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantages of a custody change. The trial judge concluded that the children's living situation

with their mother and her husband, Moreton Rolleston III, was detrimental to the children's mental and emotional health. The record does not support this conclusion. As the majority noted:

> The trial court found that Wendy had exhibited and was exhibiting some instability in that she had been engaged three times and had remarried, all in the year prior to trial, and on at least one occasion had attempted suicide. After observing the parties in court during a 2–day trial, the judge concluded that Wendy's testimony and actions at trial reflected an insecurity which was further evidence of her instability. Wendy failed to visit a child from a prior marriage, and she and her children were living in overcrowded conditions in Wendy's sister's house. Elmer and his present wife, in contrast, had provided and were providing a stable and loving atmosphere for the children and the children were happier there.

None of this evidence has been shown to be detrimental to the children's physical, mental or emotional health. There is no indication that the insecurity the trial judge detected in Wendy will continue or that it has had any negative effect on the children's physical or emotional health. It does not follow that Wendy could forget about her children merely because she is no longer in contact with a child from a previous marriage. Moreover, the living situation which concerned the court was only temporary until Wendy could join her husband in Georgia, and the fact that five children were sleeping in three beds has not been proven harmful to the children. Nevertheless, any concern the court might have had has been eliminated. Wendy's new home in Georgia will not be crowded. There are three bedrooms upstairs and room for more people downstairs. Rolleston is a pilot for Eastern Airlines and will provide adequately for the children. In addition, the children will be able to fly to Seattle several times a year for visitation with their father for a nominal fee.

In previous decisions, this court has been reluctant to disturb a custody disposition made by the trial court and will do so only if the trial court has abused its discretion.

*Dykes v. Dykes,* 69 Wn.2d 874, 876, 420 P.2d 861 (1966). RCW 26.09.260(1), however, expresses a preference for the custodial parent even if the original decree was taken by default. Custodial changes are viewed as highly disruptive for a child and are to be discouraged. Changes in custody should not be made simply because the trial court prefers one parent to the other. *Anderson v. Anderson,* 14 Wn. App. 366, 541 P.2d 996 (1975), *review denied,* 86 Wn.2d 1009 (1976); *see In re Marriage of Roorda,* 25 Wn. App. 849, 611 P.2d 794 (1980). Rather, modification should be permitted only when the requirements of RCW 26.09.260 have been met. The trial court's conclusion that modification of custody was warranted under RCW 26.09.260(1)(c) is not supported by substantial evidence and the original decree awarding custody to Wendy should not be disturbed.

Nor is there substantial evidence to support the trial court's conclusion that the children had become integrated *into* Elmer's family with Wendy's consent as required by RCW 26.09.260(1)(b). The majority concedes that "[t]here is a serious question whether there is substantial evidence to support the 'integration' required by the statute." The issue was not pursued, however, as the majority found the modification order was properly granted because of detriment to the children's health. Since I believe the record does not support a finding of detriment to their health, it is also necessary to examine the integration issue.

RCW 26.09.260(1)(b) requires *integration* into petitioner's family with the *consent* of the custodian. Both integration and consent must be found. The children resided with Elmer from June 1977 until June 1978. Wendy allowed the children to stay with Elmer only until "she got on her feet" again. During this time, the children spent the weekends with her. In February 1978, Wendy requested the children back but permitted them to remain at Elmer's until the end of the school year so that the children would not have to change schools. It is clear that Wendy intended the children to live with her and there is absolutely no evidence

that she consented to a surrender of legal custody. The requirements of RCW 26.09.260(1)(b) have not been met.

The best interests of the children do not require a change in custody. The original decree should be modified to allow Wendy to take the children with her to Georgia.

I dissent.

BRACHTENBACH and HOROWITZ, JJ., concur with DOLLIVER, J.