110 P.3d 1192 (2005)
In re the MARRIAGE OF Denise TADDEO-SMITH, Appellant, and
James Myron SMITH, Respondent.
No. 55097-7-I.
Court of Appeals of Washington, Division 1.
May 2, 2005.
As Amended May 31, 2005.
*1193 Craig Jonathan Hansen, Hansen Law Group, Bellevue, WA, for Respondent.
Keith Allen Kemper, Kristen Kellie Waggoner, Daniel Vandenbroek, Ellis, Li & McKinstry, Seattle, WA, for Appellant.
GROSSE, J.
¶1 A parenting plan may be modified if it is shown that the children have been integrated into the family of the petitioning parent with the consent of the other parent in substantial deviation from the original parenting plan. "Consent" refers to a voluntary acquiescence to surrender of legal custody. Here the superior court found, and all of the evidence in the record indicates, that the mother, Denise Taddeo-Smith, agreed to allow the father, J. Myron Smith, to care for their children temporarily, while she was in the hospital recovering from a car accident. Because Denise's agreement to allow Myron to look after the children while she was hospitalized does not and cannot establish that Denise voluntarily acquiesced to the surrender of legal custody of the children, we vacate the superior court's order modifying the parenting plan and remand for reinstatement of the original parenting plan.

FACTS
¶2 On August 13, 2003, Denise Taddeo Smith, the custodial parent of three adolescent boys, was in an automobile accident that left her paralyzed from her chest down. The day after the accident the children's father, J. Myron Smith, came to retrieve the three children and care for them while Denise was hospitalized. Then, just three weeks after the accident and while Denise was still in the hospital, Myron filed a petition for modification of the parenting plan seeking custody of all three children. He alleged that the children had been integrated into his home with Denise's consent. An adequate cause hearing was set for October 1, 2003.
¶3 Myron agreed to postpone the adequate cause hearing when Denise, still in the hospital, stipulated to a temporary order allowing the children to reside with him until the continued November 13, 2003 adequate cause hearing or further order of the court.[1] Denise continued to ask Myron that the adequate cause hearing be postponed beyond November 13, but Myron refused. Denise then stipulated to a finding of adequate cause for a hearing on Myron's petition.
*1194 ¶4 Denise was released from the hospital in early November 2003. On November 14, 2003, Denise's attorney wrote Myron explaining that Denise was physically prepared to serve as the primary custodian and requested a return to the original parenting plan. Myron refused to return the children or alter the temporary order allowing the children to reside with him. Denise then filed a petition to reinstate the original parenting plan.
¶5 At a trial on Myron's and Denise's petitions, the superior court found that while Denise's home environment was not detrimental to the emotional, physical, or psychological health of the children, the children had been integrated into Myron's family with Denise's consent in substantial deviation from the original parenting plan. The superior court then surprised both parties by granting custody of the youngest child to Denise and the two older children to Myron. Denise appeals, seeking reinstatement of the original parenting plan.

ANALYSIS
¶6 "Custodial changes are viewed as highly disruptive to children, and there is a strong presumption in favor of custodial continuity and against modification."[2] With this policy in mind, RCW 26.09.260 was designed to favor continuity and disfavor modification.[3]
¶7 RCW 26.09.260 states in pertinent part:
(1) Except as otherwise provided ... the court shall not modify a prior custody decree or parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interest of the child.
(2) In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:
...
(b) The child has been integrated into the family of the petitioner with the consent of the other parent in substantial deviation from the parenting plan; [or]
(c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child[.]
¶8 Here, the court found that the children had been integrated into Myron's family with Denise's consent in substantial deviation from the original parenting plan. But it also found that Denise's home environment was not detrimental to the emotional, physical, or psychological health of the children. This finding has not been appealed by Myron, so our review is confined to whether the superior court erred in concluding that the children had been integrated into Myron's home with Denise's consent. The proper standard of review is whether the superior court's findings are supported by substantial evidence and whether the superior court has made an error of law that may be corrected upon appeal.[4]
¶9 A review of the record reveals that the superior court's finding that Denise consented to the children's integration into Myron's family was based on an erroneous interpretation of the word "consent." The word "consent" as used in RCW 26.09.260(2)(b) has been defined by the Washington Supreme Court as "a voluntary acquiescence to surrender of legal custody."[5] Here, the superior court contemplated that "consent" meant something far less permanent than surrendering legal custody. As the following language from the superior court's order shows, the court specifically found that Denise agreed only to Myron caring for the children while she was hospitalized and found this level of consent adequate for the purposes of RCW 26.09.260(2)(b):

*1195 The mother suffered a car accident in August, 2003, in Idaho, which left her a permanent quadriplegic.
Subsequent to the accident, mother agreed to the children being in the care of the father, for an indefinite period of time. The children were with the father from August 23, 2003, with the agreement of the mother, until the beginning of February, 2004, when the mother brought a motion for return of the children. This constitutes integration into the father's home, with the agreement of the mother.
Or:
Subsequent to the accident, the mother was unable to care for herself and the father took care of the children during that time and therefore mother cannot claim father took the children without consent. After mother's release from the hospital she expected the children to be returned and did not consent thereafter. Her physical condition and recovery did not permit that to occur as she stabilized physically and arranged for her care and coordination of services. This constitutes integration into the father's home with the consent of the mother.[6]
¶10 Furthermore, the following exchange between Denise's attorney and the superior court also illustrates that the court's conclusion was not based on a finding that Denise voluntarily acquiesced to a surrender of legal custody, but on Denise's agreement that Myron should care for the children while she was hospitalized and incapable of caring for them:
MR. ESAU: The issue, as I understand it, you know, Denise was adamant, you know, from about the day she woke up, she wanted the kids back in her home. So I don't want there to be any implication that she was in any way ... acquiescing 
THE COURT: Correct.
MR. ESAU:  and the kids not being at her house. My understanding of the Court's finding was of the fact that she was incapable of caring for them, is tacit consent.
THE COURT: Correct.[7]
However, Denise's agreement to allow Myron to look after the children temporarily, while she was hospitalized, does not and cannot establish that Denise voluntarily acquiesced to the surrender of legal custody and therefore consented for the purposes of RCW 26.09.260(2)(b).
¶11 Nor is there substantial evidence in the record to support a finding of consent. Consent may be shown "by evidence of the relinquishing parent's intent, or by the creation of an expectation in the other parent and in the children that a change in physical custody would be permanent."[8] There is no evidence in the record that Denise intended the children to be in Myron's physical custody permanently, or that either Myron or the children had the expectation that the change in physical custody would be permanent. In fact, all the evidence establishes that Denise intended to return to the original parenting plan as soon as she was physically capable of caring for the children, that Myron knew of Denise's intention and Denise made him aware of that intention, and that the children were aware of the custody dispute and the possibility that they would be returning to live with Denise.
¶12 The statutory policy favoring the finality of custodial decrees would be defeated if modification of custody was allowed under these circumstances. A custodial parent should be encouraged to call upon the noncustodial parent to temporarily care for their children during a medical emergency, not discouraged out of fear of losing legal custody of the children.
Denise asks for attorney fees on appeal in the last line of the conclusion of her opening brief, but does not include a separate section in the brief devoted to the fees issue as required by RAP 18.1(b). This requirement is mandatory.[9] Her request is also unsupported by argument. RAP 18.1(b) specifically requires that a "party must devote a section of its opening brief to the request for the fees or expenses." Because Denise has failed to fulfill these requirements, the request for attorney fees is denied.
¶13 For the above reasons, we vacate the superior court's order modifying the parenting *1196 plan and remand for reinstatement of the original parenting plan.
WE CONCUR: KENNEDY and AGID, JJ.
NOTES
[1] The Commissioner granted a request to delete language in the temporary order stating that the children would be residing with Myron with Denise's permission.
[2] In re Marriage of Shryock, 76 Wash.App. 848, 850, 888 P.2d 750 (1995) (citing In re Marriage of McDole, 122 Wash.2d 604, 610, 859 P.2d 1239 (1993)).
[3] In re Marriage of Thompson, 32 Wash.App. 418, 421, 647 P.2d 1049 (1982).
[4] In re Marriage of Stern, 68 Wash.App. 922, 929, 846 P.2d 1387 (1993).
[5] In re Marriage of Timmons, 94 Wash.2d 594, 601, 617 P.2d 1032 (1980) (discussing former RCW 26.09.260(1)(b) (1980) recodified as RCW 26.09.260(2)(b) by Laws 1991, ch. 367, § 9).
[6] Clerk's Papers at 118 (emphasis added).
[7] Report of Proceedings (September 23, 2004) at 22.
[8] In re Marriage of Timmons, 94 Wash.2d at 601, 617 P.2d 1032.
[9] See Wilson Court v. Tony Maroni's, Inc., 134 Wash.2d 692, 710 n. 4, 952 P.2d 590 (1998).