IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 39749-1-III |
| | ) | |
| ROBERT J. WALDEN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| LYNDSEY M. WALDEN, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — Robert Walden appeals a trial court order on adequate cause that dismissed a petition for minor modification to the parties' parenting plan. We reverse and remand for a full hearing on the modification petition.

## FACTS

Robert Walden and Lyndsey Hansen, formerly known as Lyndsey Walden, married in 2006. They have two school-age daughters. In 2016, Mr. Walden initiated an action in Lincoln County Superior Court to dissolve the marriage. Proceeding pro se, both parties

stipulated in February 2017 to an order authorizing their mediator to prepare agreed-upon final orders.

As relevant here, the parties agreed to a parenting plan imposing no restrictions on either parent and requiring joint decision-making. The plan required the parties to attend mediation "[t]o solve disagreements" about the plan, rather than going straight to court. Clerk's Papers (CP) at 16. The plan named Ms. Hansen the children's primary custodian. It provided that Mr. Walden was entitled to have the children stay with him every other weekend, as well as an overnight visit every other Wednesday, and a week of uninterrupted vacation time in the summer. The plan stated "the parents agree to return to mediation to expand the parenting plan as needed." *Id*. at 17.

Mr. Walden signed the parenting plan on April 26, 2017. Ms. Hansen signed it on May 12, 2017.[1] The final dissolution orders, including the parenting plan, were not entered until July 7, a delay apparently resulting from outstanding payments due to the mediator. As Ms. Hansen wrote in an April 2022 declaration, "The original parenting

---

[1] The signatures were an acknowledgement that the proposed parenting plan was agreed to and presented by the parties, and that it could be entered by the court without notice to either party. *Id*. at 25. A handwritten notation was added to the proposed plan, and acknowledged by the parties on June 20 and 21, memorializing their agreement to maintain the under school-age residential schedule once their older daughter began kindergarten, "until further order of the court." *Id*. at 18.

plan was built with the idea that [Mr. Walden] was living locally here in Spokane, the same city as myself and our children." *Id*. at 80.

During June 2017, after the parties' agreement to the parenting plan but before the court issued its final orders, Mr. Walden moved to Hailey, Idaho, more than an eight-hour drive from Spokane. As a result, from day one, the parties never strictly followed their parenting plan. The parties agree that, given the distance, Mr. Walden never exercised his Wednesday overnight visits as contemplated by the plan. The parties disagree about the frequency with which Mr. Walden failed to exercise weekend visitation while he lived in Hailey, but it is undisputed that some weekend visits, as well as frequent phone contact, occurred.

In late 2021, Mr. Walden and his current wife moved to Hayden, Idaho, which the parties agree is roughly a one-hour commute from Ms. Hansen's Spokane County home.

In April 2022, Ms. Hansen petitioned to modify the parenting plan. She sought both major and minor modifications. As the reason for her requested major modifications, Ms. Hansen claimed, first, that the children "have been integrated" into Ms. Hansen's new family unit "in substantial deviation" of the original plan, with Mr. Walden's consent; and second, that Mr. Walden's home was "detrimental" to the children's health. *Id*. at 59; *see* RCW 26.09.260(2)(b), (2)(c). As the reason for her minor modifications,

Ms. Hansen claimed the original plan was "difficult to follow because" Mr. Walden "has moved." CP at 60; *see* RCW 26.09.260(5)(b).

In her modification petition, Ms. Hansen asked the court to adopt her proposed parenting plan that included new RCW 26.09.191 findings and resultant restrictions against Mr. Walden. Specifically, Ms. Hansen's proposed plan included, as reasons for placing limitations on a parent, that Mr. Walden had "abandoned" his children, "has a history of domestic violence," and makes "[a]busive use of conflict." CP at 63-64; *see* RCW 26.09.191(1)(a), (1)(c), (2)(a)(i), (2)(a)(iii), (3)(e). As for major modifications, Ms. Hansen's proposed plan provided her with sole decision-making authority over the children and a slight reduction in Mr. Walden's residential time. Rather than his current entitlement to every other weekend with the children, Ms. Hansen's plan would reduce this entitlement to every third weekend. As for minor modifications, Ms. Hansen wanted one of her daughters to be in counseling, restrictions on Mr. Walden's interactions with that daughter, removal of the mediation requirement, and for pickup and drop-off of the children to take place at a neutral site rather than the parties' homes. CP at 64; *see id.* at 60, 65, 67.

On May 3, 2022, Ms. Hansen separately served Mr. Walden with a notice of her intent to relocate with the children from Spokane to Deer Park.

On May 10, 2022—just two days before the adequate cause hearing on the modification petition—Mr. Walden filed a document formally styled as an "Objection about Moving with Children and Petition about Changing a Parenting/Custody Order." *Id*. at 237. Notwithstanding the document's title, Mr. Walden stated, he did "not object" to Ms. Hansen moving with the children, "but I ask the court to approve my proposed Parenting Plan or Residential Schedule." *Id.* The filing went on to state, "If the children are allowed to move with [Ms. Hansen], I ask the Court to approve the *Parenting Plan* or *Residential Schedule* that is proposed by me." *Id.* at 238.

Mr. Walden separately filed a proposed parenting plan that would retain joint decision-making. Mr. Walden proposed changes to the children's residential schedule. He sought to remove the Wednesday overnight visits from the parenting plan and retain the every-other-weekend schedule during the school year, but expand his summertime entitlement from every-other-weekend to an equal residential schedule.

In support of his "objection" and proposed parenting plan, Mr. Walden filed a sworn declaration. He began his declaration, "I respectfully ask that this Court deny [Ms. Hansen's] request to find adequate cause to change the parenting plan based on her allegations, and deny her new requested parenting plan. Instead, I request that [the] Court to adopt my parenting plan . . . ." *Id*. at 241. Mr. Walden claimed the superior court had

"per se [a]dequate [c]ause" for the modifications set forth in his proposed plan, based on Ms. Hansen's proposed relocation to Deer Park. *Id*.

Mr. Walden claimed he had been planning to file a petition of his own since his recent move to Hayden, but Ms. Hansen filed the instant petition first. He informed the court that he believed "expanded time" as the children aged "was contemplated in the prior parenting plan and is in the best interest of our daughters." *Id*. In support of this contention, he cited the original parenting plan, which stated, "the parents agree to return to mediation to expand the parenting plan as needed." *Id*. at 251; *see id.* at 17; *see also id.* at 18 (handwritten stipulation in original parenting plan contemplating that the under school-age residential schedule would be maintained "until further order of the court" even as the children aged and started attending school). Mr. Walden claimed that, when he and his current wife moved to Hailey, they always intended to move back somewhere closer to Spokane in a few years after her daughters graduated high school, with the expectation of increased visitation with his own children once the move occurred.

Mr. Walden referenced that his recent move to Hayden was a valid reason for granting him more residential time during the summer, writing, "It seems cruel that now that [my wife] and I have <u>finally</u> reached our goal of moving back up to the Spokane area to be near the girls, that [Ms. Hansen] is attempting to unnecessarily limit my time."

*Id*. at 249. Mr. Walden noted that a weeknight visit during the school year was impractical given the girls' residence in Spokane County, but contended "[t]here is no reason the girls shouldn't spend equal time with each parent during the Summer." *Id.* at 248-49.

Mr. Walden disputed Ms. Hansen's allegations of abandonment, domestic violence, and abusive use of conflict. He claimed there was no proof that his oldest daughter was having anxiety attacks, but he nevertheless said he was supportive of her receiving counseling.

The superior court held an adequate cause hearing, as scheduled, on May 12, 2022. At the outset of the hearing, Ms. Hansen's counsel addressed the court:

> The first thing I need to just address is something that was raised by Mr. Walden in his declaration, which is exactly the reason that we are here. We are here on a motion for adequate cause and a motion for temporary orders under a petition for modification. It is true that Ms. [Hansen] has . . . served a notice of intent to relocate. However, that is a separate proceeding. It is my understanding that Mr. Walden's objection to that has not been properly served. So, the relocation action, if there is going to be one, is not before the court today. And any requests by Mr. Walden related to relocation are not before the court today.

Rep. of Proc. (RP) (May 12, 2022) at 4. The court agreed that the issue of relocation was not before the court that day.

7

Mr. Walden's counsel began his argument by stating, "I don't want to belabor the point, but Mr. Walden's position today is that he does have a right to ask for increased time." *Id*. at 13. Counsel represented that, upon the filing of a notice of relocation and objection, "per se adequate cause [is established pursuant to RCW 26.09.260(6)] to modify the parenting plan" and the court could then adopt either party's proposed plan. *Id*. at 13-14. The court interrupted Mr. Walden's attorney, reminding him that "the relocation issue is not in front of me." *Id.* at 14. Mr. Walden's attorney conceded, "Okay, understood. I'll move on . . . . In that case, Your Honor, we would request that this court deny the parenting plan as proposed by Ms. [Hansen]." *Id.* Mr. Walden's counsel finished his argument by adding, "I think that even though it's not before the court today, the final parenting plan did anticipate that Mr. Walden would be getting more time as the girls got older and that's what he eventually hopes to get." *Id.* at 22.

The superior court proceeded to its oral ruling:

> . . . [F]irst, I want to point out that neither of the parties were following the original parenting plan, apparently. Yes, he moved to Hailey, Idaho; and if Ms. [Hansen] was concerned that he wasn't visiting them, it seems like that's the time she would [have] brought a petition to modify. But it also appears that he is a caring father, and he's made a lot of effort to stay in touch with his children. I look at the photos, it looks like . . . very happy children with their father.
> It seems that this comes down to a few issues; one is the issue of the counselor, one is the issue of the visits between the parties, the frequency of the father's visits with the children. And then added to that the parties don't

appear to be able to cooperate very well with each other, and there seems to be an issue of about how often he can Facetime with the children.

. . . [O]ne of my comments will be that [the] parenting plan made Ms. [Hansen] the custodian and it seemed to contemplate that she would be the primary parent. So, allegations that she's doing all the parenting in terms of day-to-day decisions it seems like that's what the original parenting plan contemplated.

. . . .

. . . I'll agree that there doesn't seem to be any type of medical evidence that the child . . . is having some kind of stress or anxiety disorder. But mom wants to send the child to a counselor and . . . father agrees to send the child to a counselor. So, I'm not seeing an issue there. Then mom wants to change the parenting plan to every three weeks when the original parenting plan contemplated every other week, that's not a huge difference and it seems like both parties agree to not have the Wednesday visitation in there . . . .

. . . All right, so then I go to the original parenting plan . . . which says that to solve disagreements about this parenting plan the parents will go to mediation. It does not appear that's occurred. I don't know why nobody has brought it up, but that's what the parenting plan contemplates. When I look at the issues, counselor, which both parties agree, visits including maybe not having the Wednesday visits, the parents' inability to communicate effectively on parenting, that gets handled a lot in my court with the parents using a family app. I assume both parties are probably agreeable to that. Then we get to the amount of Facetime the father has with the children, does it happen at a certain time, if it doesn't happen at a certain time, does he get to make it up, all those things could be resolved through mediation.

So frankly, I am not finding adequate cause to modify the parenting plan. Now, I don't know what the—I really don't know what the issue as to relocation is, and that's not in front of me. But what is in front of me I do not find adequate cause to modify the parenting plan. I find that you can resolve these issues in mediation it seems as far as the Wednesday visits, both parties agree. As far as the counseling, both parties agree. So, that's it. I do not find adequate cause to modify the parenting plan as it stands. These children, obviously, Mr. Walden has a desire to be a parent in these

9

children's lives, they have a right to have their father be a parent in their lives; and we're talking every other weekend and I just don't find adequate cause to modify it at this time.

CP at 475-78.

The court subsequently entered an order on adequate cause:

1. [Lyndsey Hansen] made a *Motion for Adequate Cause Decision*, [Robert Walden] objected to adequate cause being found as to [Ms. Hansen]'s Petition, and the court finds there is reason to approve this order. An adequate cause hearing was held. The Court considered the file, the pleadings submitted by parties, and the argument of counsel.

*The Court Finds*:
. . . .
4. Adequate Cause

 There is not adequate cause (valid reasons) to hold a full hearing or trial about the *Petition*. The *Petition* should be dismissed.

5. Other Findings (if any)

 <u>Of the issues raised by [Ms. Hansen] that this Court deemed valid, the parties are encouraged to settle and resolve those issues through mediation</u>.

 <u>Oral findings incorporated</u>.

*The Court Orders*:

6. Decision

 No Adequate Cause—The *Petition to Change a Parenting Plan or Custody Order* is dismissed.

7.     Other orders (if any)

The parties are encouraged to attend mediation on the issues of counseling, the mid-week visits, and other disagreements the parties may have as to the current parenting plan.

*Id.* at 406-07.

Despite the court's suggestion, mediation did not take place. Mr. Walden filed a motion to compel mediation, noting he would like "to mediate his requests to increase his time in the summer months and around the holidays." *Id*. at 409. Mr. Walden requested that, if Ms. Hansen continued to avoid mediation, he be allowed to file his own modification petition "even absent mediation." *Id.* at 410. The motion further sought sanctions for Ms. Hansen's purported intransigence. Mr. Walden noted a hearing on his motion to compel mediation.

After a hearing on July 5, 2022, the superior court granted Mr. Walden's motion to compel mediation, but denied his request for sanctions.

The court-ordered mediation was unsuccessful. In the meantime, Mr. Walden began exercising his right to midweek overnight visits pursuant to the terms of the original parenting plan.

In December 2022, Mr. Walden filed a petition in the superior court for a minor modification of the parenting plan, and simultaneously filed a proposed plan. Mr. Walden

sought the same changes to the children's residential schedule as he had proposed in his May 10, 2022, filing. That is, in his December 2022 proposal, he again sought the removal of the Wednesday overnight visits, and to retain the every-other-weekend schedule during the school year, but shift to an equal residential schedule during the summer. He moved for a finding of adequate cause and noted a hearing on his adequate cause motion.

In a simultaneously filed declaration, Mr. Walden cited his move to Hayden as a change in circumstances, explaining, "Given that I now live about an hour away from Lyndsey and the girls, I believe it is in their best interest and more practical for everyone involved to remove the mid-week visit during the school year and instead increase my time with the girls over the summer months." *Id*. at 496. He cited the provision in the original parenting plan by which the parties agreed to "'return to mediation to expand the parenting plan as needed,'" and the handwritten note by which the parties contemplated maintaining the existing under school-age residential schedule for their children once they reach school age "'until further order of the court.'" *Id.* at 497 (quoting *id.* at 17-18). Mr. Walden opined that his proposal was in the children's best interest because it would allow the children to have "significant blocks of time" with each of their parents when they are out of school for the summer. *Id.* at 498-99.

Ms. Hansen filed a memorandum and sworn declaration in opposition to Mr. Walden's petition. Ms. Hansen claimed "[t]his court has already ruled that [Mr. Walden's] moves to and from southern Idaho were insufficient to establish a substantial change of circumstances . . . . [Mr. Walden] cannot now use that as a foundation for his requests." *Id*. at 521. Ms. Hansen argued "the Court has no ability to re-open this plan." *Id*. Ms. Hansen agreed the mid-week visits should be removed from the parenting plan, because it is impractical, but opposed any other changes to the plan.

Apart from objecting to Mr. Walden's petition, Ms. Hansen also moved to change venue to Spokane County. Mr. Walden objection to the venue motion, but the court granted the motion and the matter was transferred to Spokane County Superior Court. The court did not rule on Mr. Walden's modification petition before transferring venue.

Approximately one week after Lincoln County transmitted its case file to Spokane County, Mr. Walden moved for a finding of adequate cause on his petition.

In Spokane County, a superior court commissioner heard argument on Mr. Walden's motion for adequate cause. The commissioner found there was adequate cause to support the petition and scheduled a full hearing. Ms. Hansen moved to revise the commissioner's ruling, arguing Mr. Walden was "judicially estopped" from citing his move to Hayden as a substantial change in circumstances. *Id*. at 575.

13

A superior court judge granted Ms. Hansen's motion to revise, thereby denying

adequate cause and dismissing Mr. Walden's petition. The superior court held that Mr.

Walden was "judicially estopped from alleging that his move constitutes a substantial

change of circumstances for a minor modification." *Id*. at 614. The court reasoned:

> Mr. Walden opposed [Ms. Hansen's] modification in its entirety arguing
> that there was no detriment or integration and that the move did not
> constitute a substantial change. On May 16, 2022, [the Lincoln County
> court] agreed and denied adequate cause on Ms. [Hansen]'s petition for a
> major and minor modification. . . .
> . . . .
> Mr. Walden's argument in Lincoln County against Ms. [Hansen]'s
> petition for a major and minor modification was that his move did not
> constitute a substantial change of circumstance. His declaration describes
> the efforts he went through to ensure that he was seeing the children every
> other weekend [when he lived in Hailey]. This position is clearly
> inconsistent with his current position that his move is a substantial change
> of circumstance. Mr. Walden's argument that he did not stipulate to the
> move as a substantial change of circumstance because it would require him
> to stipulate to Ms. [Hansen]'s allegations of abandonment and integration
> are without merit. Mr. Walden could have asked the court to find that his
> move was a substantial change for a minor modification and asked the court
> to adopt his proposed parenting plan instead.

*Id.* at 613-14. The superior court opined that, if it agreed with Mr. Walden, it would

create the impression the Lincoln County court was misled and that Ms. Hansen would

be unfairly disadvantaged from allowing Mr. Walden to cite his move as a substantial

change. The court further held that the parenting plan's provision by which the parents

agreed to return to mediation to expand the plan did not excuse Mr. Walden from pointing

to a substantial change in circumstances.

The superior court also held that, in the alternative, even if Mr. Walden was not

judicially estopped from "arguing that his moves . . . constitute[] a substantial change of

circumstance," the moves were "in fact, . . . not . . . a substantial change of

circumstance." *Id*. at 615. The court noted first that Mr. Walden's move "was known to

the parties" prior to the entry of the final parenting plan in July 2017. *Id.* Second,

the court reasoned that Mr. Walden could not "in good faith" claim the Wednesday

overnight visits were now impractical due to his residence in Hayden when he had

"voluntarily abdicated" those visits for years while living in Hailey. *Id.* at 616.

Mr. Walden timely filed a notice of appeal.

ANALYSIS

At issue in this appeal is whether Mr. Walden has established adequate cause

for a minor modification to the parties' parenting plan pursuant to RCW 26.09.260(1)

and (5). Our review is of the superior court judge's decision, not the commissioner's.

*In re Marriage of Lyle*, 199 Wn. App. 629, 633, 398 P.3d 1225 (2017).

Here, the superior court judge determined Mr. Walden had failed to establish

adequate cause on two bases: judicial estoppel and lack of factual basis. Each of these

determinations is reviewed for abuse of discretion. *See Miller v. Campbell*, 164 Wn.2d 529, 536, 192 P.3d 552 (2008) (judicial estoppel); *In re Parentage of Jannot*, 149 Wn.2d 123, 125-26, 65 P.3d 664 (2003) (factual basis). While the abuse of discretion standard is deferential, it has its limits. Discretion is abused if the court's decision is rooted in legal error or is exercised on untenable grounds or for untenable reasons. *Ugolini v. Ugolini*, 11 Wn. App. 2d 443, 446, 453 P.3d 1027 (2019).

We discuss the superior court judge's two bases for revision in turn.

*Judicial Estoppel*

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (quoting *Bartley-Williams v. Kendall*, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006)). This doctrine seeks to preserve respect for judicial proceedings, and to avoid inconsistency, duplicity, and waste of time. *Id.*

"Three core factors guide a trial court's determination of whether to apply the judicial estoppel doctrine." *Arkison*, 160 Wn.2d at 538. The first factor asks whether the party's prior position and later position are "*clearly* inconsistent." *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 864, 281 P.3d 289 (2012) (emphasis added);

*see also Arkison*, 160 Wn.2d at 538. The second factor weighs in favor of estoppel if the

record indicates that either the first or second court "was misled." *Anfinson*, 174 Wn.2d at

864; *see also Arkison*, 160 Wn.2d at 539. The third factor supports estoppel if the party

would "'derive an unfair advantage'" from being allowed to assert the purportedly

inconsistent position. *Arkison*, 160 Wn.2d at 539 (quoting *New Hampshire v. Maine*,

532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).[2]

Here, none of the three core factors support finding judicial estoppel.

First, Mr. Walden has not taken clearly inconsistent positions. Throughout these

proceedings, Mr. Walden has consistently maintained that the parenting plan needed to

be changed due to his move to Idaho and the impracticality of the Wednesday visits.

While Mr. Walden opposed Ms. Hansen's petition for a major modification in the

Lincoln County proceedings, this was because Ms. Hansen sought to reduce his time

---

[2] These factors are neither exclusive nor exhaustive. *See Kellar v. Estate of Kellar*, 172 Wn. App. 562, 580, 291 P.3d 906 (2012); *DeAtley v. Barnett*, 127 Wn. App. 478, 483, 112 P.3d 540 (2005); *see also New Hampshire*, 532 U.S. at 750 ("'[T]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation . . . .'") (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)). Additional factors "may" guide a court's decision, including whether the first-asserted position was successfully maintained; whether a judgment has been rendered adopting the prior position; whether the parties and questions are identical; and whether a misled party has changed position based on the inconsistent arguments. *Kellar*, 172 Wn. App. at 580.

with his daughters and deprive him of decision-making authority. Mr. Walden had made clear during the Lincoln County proceedings that he did not oppose "reopen[ing] the parenting plan." CP at 594. In fact, he even filed a proposed parenting plan as part of those proceedings. *See id.* at 366-72.

Nor was the Lincoln County court misled about Mr. Walden's position. That court held there was not adequate cause to hold a full hearing on *Ms. Hansen's petition. Id.* at 406-07. Nevertheless, the court recognized that the current parenting plan was problematic. In recognition that the original plan required mediation to settle the parties' disputes, the Lincoln County court first encouraged and then required the parties to engage in mediation. It would be anomalous to conclude that the Lincoln County court would have ordered mediation if the court did not think there was any reason to modify the parenting plan.

Finally, there are no countervailing fairness concerns. There is nothing inherently unfair about allowing Mr. Walden to seek the same modifications he had sought all along, a request on which no trial court has yet reached the merits.

Given none of the three core factors support application of judicial estoppel, the Spokane County Superior Court abused its discretion by invoking judicial estoppel as a bar to finding adequate cause. *See Anfinson*, 174 Wn.2d at 865 (holding judicial

estoppel did not apply "[b]ecause two of the three factors disfavor[ed] application");

*see also Arp v. Riley*, 192 Wn. App. 85, 101, 366 P.3d 946 (2015) (reversing where

"the record does not establish . . . the pertinent elements of judicial estoppel").

*Factual basis*

To establish adequate cause for a full hearing on a parenting plan modification, a

petitioning parent has the burden of presenting "'evidence sufficient to support a finding

on each fact that [they] must prove in order to modify.'" *In re Custody of T.L.*, 165 Wn.

App. 268, 275, 268 P.3d 963 (2011) (quoting *In re Marriage of Lemke*, 120 Wn. App.

536, 540, 85 P.3d 966 (2004)). In the context of a minor modification petition, this entails

showing that there has been a substantial change of circumstances and that modification

is in a child's best interests. RCW 26.09.260(1), (5).

The superior court ruled Mr. Walden failed to present sufficient facts to establish a

substantial change of circumstances. While Mr. Walden claimed that his move to Idaho

satisfied this criterion, the court noted that this fact was known to the parties at the time

the original parenting plan was entered by the Lincoln County court. In addition, the court

faulted Mr. Walden for failing to seek modification of the plan at any time during the

years he lived in Hailey, Idaho. Because of this, the court reasoned, Mr. Walden's

argument that the weeknight visits—which he had never exercised—were only now impractical was brought in bad faith.

We disagree with both of the superior court's reasons for rejecting Mr. Walden's proof as to a change of circumstances.

The record makes plain that, at the time the parties agreed to terms of the original parenting plan, Mr. Walden lived in Spokane and the expectation was that he was to remain there. Although the Lincoln County court did not enter the parties' agreed parenting plan until after Mr. Walden moved to Idaho, the court was not alerted to the move at the time it entered its final parenting plan. Thus, Mr. Walden's move from Spokane to Idaho qualified as a change of circumstances that was "unknown to the court at the time of" the original plan. RCW 26.09.260(1). Given the "paramount concern for the best interests of the child," it is not the timing of the circumstances that matters, but rather whether the circumstance was previously known to the court. *See In re Marriage of Timmons*, 94 Wn.2d 594, 597-98, 617 P.2d 1032 (1980).

Mr. Walden's delay in bringing to the attention of the court his relocation from Washington is not fairly attributable to bad faith. For years after Mr. Walden moved to Idaho, *neither* parent petitioned to modify the plan, notwithstanding its obvious impracticality, and notwithstanding that they were not following it. Instead, the parents

20

found extrajudicial work-arounds. Once Mr. Walden moved to Hayden, Idaho, he was close enough to exercise more robust visitation and began asking for the court's assistance in short order. The timing of Mr. Walden's decision to engage in litigation is not a basis for denying adequate cause, especially given it is uncontested that the current parenting plan is unworkable and contrary to the best interest of the parties' children.

## CONCLUSION

The superior court's order on revision denying adequate cause on Mr. Walden's petition to modify the parenting plan is reversed. This matter is remanded with instructions for the court to hold a full modification hearing. The parties' requests for attorney fees are denied, as is Mr. Walden's request for judicial reassignment.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____       _____
Lawrence-Berrey, C.J.           Fearing, J.

21