248 P.3d 94 (2011)
In re the MARRIAGE OF William AKON, Appellant, and
Tereza Awan, Respondent.
No. 27922-7-III.
Court of Appeals of Washington, Division 3.
February 10, 2011.
*96 Emily Cordo, Sexual Violence Law Ctr., Seattle, WA, for Appellant.
Gail Anne Hammer, Gonzaga University School of Law, Spokane, WA, for Respondent.
KORSMO, J.
¶ 1 This action involves a stepfather's attempt to claim a presumption of paternity based on the alleged invalidity of the mother's first marriage under Sudanese law because her first husband, the biological father, has not completed payment of his dowry. We conclude that the trial court did not err when it rejected the stepfather's paternity claim after partially vacating a default judgment. We affirm.

FACTS
¶ 2 This saga spans southern Sudan to Spokane, and features a civil war, refugees seeking to escape Africa and a failure of consideration because the war prevented payment of the remaining cows owed the bride's father. Against this chaotic backdrop, the facts and law are often unclear and in some dispute. The parties have distinctly different views concerning their marriage, starting with the basic issue of when they married.

Ms. AWAN'S VERSION
¶ 3 Tereza Awan testified that she married Jok Aleu in a traditional Sudanese marriage in their village, Aweil, in 1994. The marriage produced two daughters, N.A. born in 1996 and A.A. in 1998, and one son, B.A., born in 2000. She further testified that Jok agreed to pay her father 50 cows in exchange for the marriage. He had only paid 35 cows by the time war reached their village. As a result of the nonpayment, Ms. Awan testified that the marriage was not recognized by Sudanese civil authorities. However, the marriage was recognized as a traditional marriage because their village Sultan had approved it.
¶ 4 Tereza was pregnant with B.A. when the war reached Aweil. She fled with A.A. to Khartoum.[1] The trip took some time because *97 she had to work along the way to survive and to raise money for train tickets. They eventually reached Khartoum and B.A. was born there. The family lived in the Khartoum suburbs with other refugees. She eventually met William Akon, who himself was a refugee.
¶ 5 There the two hatched a plan to escape the war. The two went through a marriage ceremony that Ms. Awan did not recognize as valid. Mr. Akon had birth certificates reissued that named him as the father of A.A. and B.A. He taught Ms. Awan a story that the two had been married in 1996, but carried away and enslaved during the war. They were forced to work on a farm. The children were conceived by rape during the enslavement. Eventually the couple and the children escaped to Khartoum.
¶ 6 They sought asylum and moved to Egypt. They received a family passport for the four; the children bore Akon's name in that document. The asylum request was granted and the family was relocated to Spokane in 2004 because George Eliow, Jok Aleu's brother, lived there.[2] The family signed, and later repaid, a note for their travel expenses. Ms. Awan paid for herself and A.A. Mr. Akon paid for himself and B.A.
¶ 7 In Spokane, the four lived together but the couple kept separate expenses. Ms. Awan alleged that Mr. Akon would beat her and sometimes tried to force her to have sex with him. He moved out of their apartment in April 2005 at her request.
¶ 8 That November she went to see him about back-due rent he had promised to pay her. A fight ensued. She was arrested because she could not explain the situation as she does not speak English. No charges were filed.
¶ 9 Ms. Awan moved in with Steven Wol, another Sudanese refugee. She applied for government assistance and later received child support from Mr. Akon even though she had not sought it. Mr. Akon filed for dissolution of the marriage and claimed to be the father of the children. She was served the documents but did not understand them. She believed they were from her landlord. She, Wol, and the children moved to Tennessee where there is another large Sudanese refugee community.

MR. AKON'S VERSION
¶ 10 William Akon testified that he and Ms. Awan had met and married in Khartoum. They were abducted while travelling and forced to work on an isolated farm for the next 2½ years. The children were conceived and born during this time as the result of the farm owner raping Ms. Awan. The foursome eventually escaped to Khartoum.
¶ 11 All of their documentation had been lost during their enslavement, so a new marriage certificate was obtained in Khartoum and birth certificates were issued for each child. These documents were used to obtain a family passport. The family sought asylum and moved to Egypt. The couple also went through a marriage ceremony in Egypt in 2004. The group obtained asylum and were relocated to Spokane.
¶ 12 For awhile things went well. He worked at night and she during the morning. While she was gone, Mr. Akon watched the children and got them ready for school. In 2005, the relationship began to deteriorate. At that point Ms. Awan told him about her first marriage; he had not known that she was previously married. Money problems developed because he was working less; the couple decided to separate. He moved nearby in order to stay close to the children. He continued to watch them until a new boyfriend moved in with Ms. Awan.
¶ 13 After the marriage was dissolved, Mr. Akon obtained a larger apartment in order to house the children. Upon their return to Spokane, the children lived with him and did well in school.

PROCEDURAL HISTORY AND TRIAL
¶ 14 Ms. Awan did not respond to the dissolution petition. Counsel for Mr. Akon obtained an order of default. A decree of dissolution and parenting plan was also entered. *98 Those documents awarded the children to Mr. Akon.
¶ 15 The Spokane judgment was enforced by the Tennessee courts and the children were returned to Spokane to live with Mr. Akon. Ms. Awan then returned to Spokane and obtained counsel. Her attorney moved to vacate the default judgment.
¶ 16 The superior court partially vacated the judgment; it limited relief to the child custody and parenting plan issues. A guardian ad litem (GAL) was appointed to represent the interests of the children only with respect to a parenting plan. The court declined to decide whether the parties had ever married or whether Mr. Akon was the legal father of the children.
¶ 17 Ms. Awan filed an action to disestablish paternity. That action was consolidated for trial with the dissolution action.
¶ 18 The case proceeded to trial. Most of the witnesses used interpreters. Jok Aleu testified by telephone from the Sudan; he confirmed that he married Ms. Awan in 1994 and still owed her father 15 cows. His brother testified in person. Joseph Nyiang, who knew both Mr. Akon and Ms. Awan in Khartoum and Egypt, also immigrated to Spokane and was called to testify. The GAL recommended placing the children with Mr. Akon. Trial consumed seven days of court time over a two week period in late 2008. The parties made written closing submissions.
¶ 19 The trial court issued a detailed letter ruling. It determined that Ms. Awan's version of the facts concerning events prior to 2001 was more credible than Mr. Akon's version. The court found that Ms. Awan had wed Jok Aleu in a traditional Sudanese marriage in 1994 that was recognized in their culture. The court also concluded that Mr. Akon and Ms. Awan went through a marriage ceremony in Egypt in 2004. The court ruled that Mr. Akon was not a parent and ordered the children returned to Ms. Awan. If treated as a nonparental child custody petition, the petition failed because there was no showing Ms. Awan was an unfit mother.
¶ 20 Appropriate and detailed written findings were entered. Mr. Akon then timely appealed to this court.

ANALYSIS
¶ 21 This appeal raises several issues concerning the 1994 marriage, whether the interests of the children were properly considered and protected, and whether Mr. Akon should be presumed to be the father even though he is not the biological father. Those issues are addressed in turn.

SUDANESE MARRIAGE
¶ 22 The primary thrust of this appeal is directed against the trial court's determination that Ms. Awan married Mr. Aleu in 1994 since that ruling is ultimately dispositive of Mr. Akon's parentage claim. This situation appears to fall within the cracks of our marriage statutes.
¶ 23 In Washington, a marriage "is a civil contract between a male and a female who have each attained the age of eighteen years, and who are otherwise capable." RCW 26.04.010(1). A marriage can be solemnized if the parties assent before the officiating official and two witnesses that they take each other to be husband and wife. RCW 26.04.070. Marriages performed in accord with common religious practices are also valid if the appropriate paperwork is filed. RCW 26.04.120.
¶ 24 "A marriage between two persons that is recognized as valid in another jurisdiction is valid in this state only if the marriage is not prohibited or made unlawful" under other subsections of the statute. RCW 26.04.020(3). Stated another way: "A marriage valid in the jurisdiction where contracted and consummated, is a valid marriage in the state of Washington." In re Welfare of Warren, 40 Wash.2d 342, 344, 243 P.2d 632 (1952). The parties must intend to enter into a marital relationship. In re Gallagher's Estate, 35 Wash.2d 512, 515, 213 P.2d 621 (1950).
¶ 25 The existence of foreign law "is a fact issue that must be pleaded and proved" by the proponent of the foreign law. State v. Rivera, 95 Wash.App. 961, 966, 977 P.2d 1247 *99 (1999). In Rivera, the existence of a foreign religious marriage ceremony was established by the testimony of the participants, but no evidence was produced considering the law governing a valid marriage. In that circumstance, the proponent had failed to establish that a valid foreign marriage had taken place. Id.
¶ 26 The trial court's decision following a bench trial is reviewed to determine whether the findings are supported by substantial evidence and whether those findings support the conclusions of law. Dorsey v. King County, 51 Wash.App. 664, 668-669, 754 P.2d 1255, review denied. 111 Wash.2d 1022 (1988). Substantial evidence is the quantum of evidence sufficient to persuade a rational, fair-minded person the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 176, 4 P.3d 123 (2000). In determining the sufficiency of evidence, an appellate court need only consider evidence favorable to the prevailing party. Bland v. Mentor, 63 Wash.2d 150, 155, 385 P.2d 727 (1963). In evaluating the persuasiveness of the evidence and the credibility of witnesses, we must defer to the trier of fact. Burnside v. Simpson Paper Co., 123 Wash.2d 93, 108, 864 P.2d 937 (1994). "[C]redibility determinations are solely for the trier of fact [and] cannot be reviewed on appeal." Morse v. Antonellis, 149 Wash.2d 572, 574, 70 P.3d 125 (2003). Unchallenged findings of fact are also verities on appeal. In re Estate of Jones, 152 Wash.2d 1, 8, 93 P.3d 147 (2004); RAP 10.3(g). We review questions of law de novo. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wash.2d 873, 879-880, 73 P.3d 369 (2003).
¶ 27 Mr. Akon argues that the trial court erred in finding that a valid marriage occurred in the Sudan in 1994. In particular, he argues that Ms. Awan's own evidence showed that the 1994 marriage was not a valid civil wedding because Mr. Aleu still owed 15 cows to his father-in-law. For the same reason, he contends that the cultural marriage was invalid; he characterizes it as "inchoate" due to the failure to complete payment.
¶ 28 The trial court found that a valid cultural marriage had taken place, but not a valid civil marriage. There is substantial evidence to support the determination that a wedding ceremony took place. Three witnesses testified to the event, including the two participants.
¶ 29 Whether the marriage was valid is a closer call. The trial court recognized that there was little evidence whether the Sudanese government would recognize the marriage, but there was some. Both Aleu and Awan testified that there was a valid cultural marriage. There also was evidence that the two intended to marry, received the blessing of their local authoritythe Sultan, consummated the marriage, and substantially paid the dowry. This is sufficient evidence to support the determination that a valid cultural marriage took place.
¶ 30 While Akon argues that the failure to complete payment invalidates the cultural marriage, he presents no law on that topic. Rivera appears to allow parties to testify to the state of the law in a foreign jurisdiction.[3] Aleu and Awan testified that the incomplete payment did not invalidate the cultural marriage. The trial court therefore had an evidentiary basis for concluding that this marriage was valid in Sudan.
¶ 31 The challenged finding was supported by the evidence. The trial court did not err in determining that Ms. Awan entered into a valid cultural marriage in 1994.

CHILDREN'S INTERESTS
¶ 32 Mr. Akon argues that the interests of the two children were not adequately protected because (1) their best interests were not considered since they were not parties to the disestablishment action and (2) they were not represented by a GAL with regard to the parentage issue. Mr. Akon lacks standing to assert the first claim on *100 appeal and waived the second by not raising it at trial.
¶ 33 Children have due process rights in paternity determination actions. State v. Santos, 104 Wash.2d 142, 702 P.2d 1179 (1985). In particular, they have financial and relationship interests that are protected by due process. Id. at 146-148, 702 P.2d 1179. Those result in a right to an accurate determination of paternity. Id. at 147-148, 702 P.2d 1179; State ex rel. McMichael v. Fox, 132 Wash.2d 346, 352, 937 P.2d 1075 (1997).
¶ 34 Constitutional issues may initially be raised on appeal, provided that the record is adequate to permit review. RAP 2.5(a); State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995). However, constitutional rights are personal and normally[4] cannot be asserted by a third party. E.g., State v. Gutierrez, 50 Wash. App. 583, 749 P.2d 213, review denied, 110 Wash.2d 1032 (1988); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Mr. Akon did not attempt to add the children as parties to the disestablishment action. RCW 26.26.555(1). If he believed their rights needed to be asserted in the trial court, he had that opportunity. We do not believe that it is appropriate to permit him standing to assert their due process rights for the first time in this appeal. Accordingly, we do not consider his argument that the best interests of the children were ignored by the trial court.[5]
¶ 35 Mr. Akon also argues that the children were entitled to be represented by a GAL with respect to parentage issues. The Uniform Parentage Act requires the appointment of a GAL whenever a child is a party to an action or when the child's interests are not adequately represented. RCW 26.26.555(2). It is error to deny a request for a GAL made by a party in a paternity action. In re Parentage of Q.A.L., 146 Wash. App. 631, 637, 191 P.3d 934 (2008). Here, however, there was no request to have the guardian's mandate expanded to include parentage issues. To the extent Mr. Akon claims any statutory right was violated, he has waived the claim by not requesting the court to act. To the extent he is again trying to assert a due process right of the children, we conclude he still lacks standing to present the claim for the first time in this court.
¶ 36 Mr. Akon lacks standing to assert alleged violations of the children's due process rights on appeal.

PATERNITY RULING
¶ 37 Mr. Akon argues on different theories that he is either a presumed or an adjudicated father under the Uniform Parentage Act and that the action to disestablish him was untimely under the Act's statute of limitations. We do not agree with his theories on presumption or the statute of limitations. Ultimately, however, we conclude that even if he were correct, the presumption must give way to actual evidence. We address each of his arguments in turn.
¶ 38 RCW 26.26.116(1)(a). Appellant's first argument for presumed paternity is based on RCW 26.26.116(1)(a). That subsection provides that a man is a presumed father if he and the mother are married at the time the child was born. Mr. Akon argues that he and Ms. Awan married in 1996. The children, born in 1998 and 2000, are therefore presumed to be his.
¶ 39 The trouble with this argument is that the trial court found the facts contrary to this version of the events. The evidence amply demonstrated that Ms. Awan married Mr. Aleu in 1994 and that Mr. Akon did not even meet Ms. Awan until the following decade. The findings at bench trial are supported by substantial evidence. This theory of presumption fails Mr. Akon. Instead, this *101 subsection does establish a presumption in favor of Mr. Aleu.
¶ 40 RCW 26.26.116(1)(d). Appellant's stronger claim is found in this subsection, which provides:
(1) A man is presumed to be the father of a child if:
. . . .
(d) After the birth of the child, he and the mother of the child have married each other in apparent compliance with law, whether or not the marriage is, or could be declared invalid, and he voluntarily asserted his paternity of the child, and:
(i) The assertion is in a record filed with the state registrar of vital statistics;
(ii) Agreed to be and is named the child's father on the child's birth certificate; or
(iii) Promised in a record to support the child as his own.
¶ 41 Arguably, Mr. Akon is a presumed father under this subsection. He did marry the mother of the children, even if that marriage is potentially invalid because the mother was already married. While subsections (i) and (iii) do not apply to this case, subsection (ii) probably does. Although the trial court did not admit the birth certificates into evidence because they were obtained for emigration purposes, Mr. Akon argues that their admitted existence is enough to trigger the statute. There is no need to decide that issue because even if Mr. Akon is a presumed father, his claim still fails.[6]
¶ 42 Presumptions are the bats of the law, flitting away in the light of evidence. In re Indian Trail Trunk Sewer, 35 Wash. App. 840, 843, 670 P.2d 675 (1983) (internal quotation marks and citation omitted), review denied, 100 Wash.2d 1037 (1984). "A presumption is not evidence and its efficacy is lost when the other party adduces credible evidence to the contrary." Id. Here there are competing presumptions and the trial court needed to decide who the legal father was. Everyone agrees that Mr. Akon was not the biological father of the children.[7] The trial court understandably accepted the testimony that the children resulted from Ms. Awan's first marriage. Mr. Aleu, not Mr. Akon, was the legal (and biological) father. Any presumption of paternity was overcome by evidence; the evidence supported the determination that Mr. Akon was not the legal father.
¶ 43 Res Judicata. Mr. Akon also argues that he is an adjudicated father by virtue of the default judgment in the dissolution case because the trial court did not vacate that portion of the decree. This claim fails on two different grounds. First, the trial court in partially vacating the default judgment did not settle the paternity claim. Although it understandably did not vacate that portion of the default judgment because it would require evidence beyond the parameters of a CR 60(b) motion, the vacation order expressly stated that it was not deciding paternity. In essence, that order left the paternity issue open to further consideration. Second, the default order was not a final judgment entitled to res judicata as to paternity.
¶ 44 Res judicata applies to dissolution proceedings. In re Marriage of Timmons, 94 Wash.2d 594, 597, 617 P.2d 1032 (1980). However, when dissolution is obtained by the agreement of the parties or by default, res judicata is not applied to custody-related facts. Id. at 598-600, 617 P.2d 1032. Instead, "predecree" facts are considered "unknown" in cases of default and can be considered by the trial court in an action to modify a decree because the critical issue is to determine custody in the best interests of the children. Id. at 600, 617 P.2d 1032.
¶ 45 McDaniels v. Carlson, 108 Wash.2d 299, 738 P.2d 254 (1987), also is instructive. There a man who believed he was the father of the child in question sued to establish paternity. The mother and her ex-husband argued that the question of paternity had *102 been settled by their divorce decree. Id. at 301-302, 304, 738 P.2d 254. The court determined that collateral estoppel did not bar the action. The potential father was not in privity with the parties to the dissolution, and the dissolution and parentage cases did not have an identity of issues. Id. at 305, 738 P.2d 254. With respect to the latter point, the court noted that collateral estoppel applies only to "ultimate facts" that were actually at issue in the first proceeding rather than to "evidentiary facts" that are "merely collateral to the original claim." Id. The court went on to conclude:
The issue of paternity was never actually litigated in the dissolution proceeding; it was merely presumed upon the parties' stipulations. Moreover, paternity was only collateral to the real issues in controversy: custody, support, and visitation rights. Therefore, there was no identity of issues between the paternity finding in the prior dissolution case and the present cause of action.
Id. at 306, 738 P.2d 254.
¶ 46 We think these cases resolve the appellant's claims concerning the decree of dissolution. The question of paternity was not litigated in the dissolution action. The dissolution court did not consider evidence concerning the actual paternity of the children. Whether or not Mr. Akon was the actual father of the children is intimately tied to the custody question. We believe the rule of Timmons applies to this fact pattern. Paternity was only a collateral matter in the dissolution. The doctrine of res judicata did not preclude the trial court from considering parentage at trial.
¶ 47 Statute of Limitations. There are two statutes of limitations in the Uniform Parentage Act that arguably apply to this case. RCW 26.26.530(1) requires an action to adjudicate parentage be brought within two years of the birth of the child. The statute creates one exception: an action "to disprove the father-child relationship . . . may be maintained at any time" if (a) the presumed father and mother did not engage in intercourse during the time of conception and (b) "the presumed father never openly treated the child as his own." RCW 26.26.530(2).
¶ 48 In cases of adjudicated parentage, RCW 26.26.540(2) states:
If a child has an acknowledged father or an adjudicated father, an individual, other than the child, who is neither a signatory to the acknowledgment nor a party to the adjudication and who seeks an adjudication of paternity of the child must commence a proceeding not later than two years after the effective date of the acknowledgement or adjudication.
¶ 49 Mr. Akon argues that both of these statutes precluded Ms. Awan's action to disestablish paternity. He argues that under subsection .530, the children are more than two years old and he has openly[8] treated them as his own, so the time limit exception does not apply. We think his argument too cavalierly disposes of Mr. Aleu's status of father. Under appellant's reading of the statute, any stepfather of a child over the age of two could claim legal status as father simply by holding the children out as his own. For instance, assume that mother and father dissolve their marriage in California. Mother moves to Washington with the couple's children, aged 14 and 11, while father remains in California. Mother remarries and the new stepfather, with or without the father's knowledge, openly claims the children as his own. According to Mr. Akon, the father could not challenge the stepfather's status as legal father because the children are older than age two.
¶ 50 This approach would create significant constitutional problems by depriving a father of his legal parentage status and leaving him without any basis for challenging the action. We believe that at a minimum the two-year period should not run until one acquires the status of presumed father, and arguably should only apply against those *103 with knowledge of the claim.[9] Nonetheless, despite these observations, we need not decide this issue because of the dissolution decree. Mr. Akon's status moved from presumed father to adjudicated father once the decree was entered. RCW 26.26.630(3)(b); In re Parentage of M.S., 128 Wash.App. 408, 413, 115 P.3d 405 (2005). Thus, the statute of limitations period of subsection .540 is arguably applicable here.
¶ 51 That limitation period requires actions to be brought within two years of the adjudication. However, that two-year period only applies to nonparties to the adjudication. Mr. Akon thus argues that Ms. Awan cannot rely upon that statute since she was a party to the adjudication. Instead, he argues that her remedy was to challenge the decree. RCW 26.26.630(5).[10]
¶ 52 This argument has some support in the statute. However, we think that for the same reasons that res judicata does not apply, the statute of limitations also is not applicable. The dissolution action did not decide the "ultimate fact" of parentage status and the vacation order expressly left that issue undecided. It makes little sense to bar the parentage action when the decree that led to the adjudication is itself unsettled by the CR 60(b) ruling. Thus, we believe the phrase "effective date of the . . . adjudication" in RCW 26.26.540(2) means an adjudication that is final against the parties. Because the "adjudication" was not final on the parentage issue, it could not bar the disestablishment action.[11]
¶ 53 The action to disestablish paternity was timely.

CONCLUSION
¶ 54 Mr. Akon is to be commended for his concern for the children and his willingness to become their father although under no biological obligation to do so. However, the presumptions he relies upon must give way to the evidence. The trial court did not err in disestablishing paternity and returning the children to their mother.
¶ 55 Affirmed.
WE CONCUR: KULIK, C.J., and BROWN, J.
NOTES
[1] N.A. escaped with her grandmother and remains in Sudan. She is not involved in this action.
[2] The brothers use different English spellings for their last names.
[3] While proof of a foreign statute or other law would be preferable, we do not see that as an essential requirement, particularly given the state of affairs in the region where the 1994 marriage took place. If, however, proof of black letter law is required, then Mr. Akon's argument that the 2004 Egyptian marriage is valid would also fail for lack of proof. While proof of the ceremony was presented, there was no proof of the underlying legal basis for the marriage.
[4] An exception exists for First Amendment overbreadth challenges. New York v. Ferber, 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).
[5] Courts cannot consider the "best interests of the child" standard in disputes between parents and nonparents. Troxel v. Granville, 530 U.S. 57, 68, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); In re Parentage of C.A.M.A., 154 Wash.2d 52, 109 P.3d 405 (2005). We do not address whether the standard is appropriate to this action between the biological mother and a nonbiological putative father.
[6] Mr. Akon also argues that the trial court erred by not admitting the birth certificates into evidence. We need not decide that argument in light of our conclusion on the merits of his claim.
[7] While perhaps the Uniform Parentage Act permits multiple fathers to exist, biology does not.
[8] While it is tempting to reject Mr. Akon's evidence that he held the children out as his own on the basis that he did so to deceive immigration authorities, Ms. Awan was a willing participant in the scheme. Rather than permit either party to benefit from his or her own fraud, we decide the case on other grounds.
[9] But see In re Parentage of C.S., 134 Wash.App. 141, 139 P.3d 366 (2006) (refusing to use discovery rule in paternity case where the parties had knowledge that presumed father was not the actual father).
[10] That statute provides: "A party to an adjudication of paternity may challenge the adjudication only under law of this state relating to appeal, vacation of judgments, and other judicial review."
[11] This conclusion is also consistent with the apparent policy of RCW 26.26.540(2) to permit challenges to paternity by those unable to challenge them in the "adjudication." Since the dissolution was granted by default and Ms. Awan, who does not speak English, did not understand the proceeding, it would be particularly harsh to bar her by the default.