2014 DEC 22


# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 71240-3-I |
| HEIDI RENEE GOUDE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MICHAEL ZANE GOUDE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 22, 2014 |

SPEARMAN, C.J. — Michael Goude (Michael)[1] appeals the trial court's findings of fact and conclusions of law regarding the conduct of his former wife, Heidi Goude ("Heidi"). He argues that the trial court erred in failing to find that Heidi had "a history of acts of domestic violence" or had committed other acts that would require restricting her residential time and decision-making ability under RCW 26.09.191. Michael also appeals the trial court's valuation of his business. Because substantial evidence supports the trial court's decision, we affirm.

## FACTS

Michael and Heidi Goude married on May 15, 1999. The parties have three children: daughter K.G., sons M.G. and Q.G. The parties separated on

---

[1]Because the parties share the same last name, we refer to them by their first names for clarity. We intend no disrespect.

June 15, 2012. In August 2012 the court commissioner entered temporary orders in which the children resided a majority of the time with Michael. Following a trial, the court entered final orders on November 26, 2013, in which the children resided a majority of the time with Heidi.

During their marriage, the parties had a number of disputes that escalated into physical altercations.[2] In August 1999 Heidi petitioned for a domestic violence protection order (DVPO) against Michael, and upon being served, Michael petitioned for a similar order against Heidi. The court granted both petitions and entered temporary protection orders in favor of both parties. Heidi subsequently learned she was pregnant and the couple decided to try to work things out. They appeared together and asked the judge to dismiss both protection orders. The judge denied the requests and issued final protection orders that remained in effect until August 16, 2000.

In May 2000 Michael was working at Heidi's parent's club when he got into a physical fight with Heidi's brother. Heidi got involved and hit her brother with a chair. Michael was charged with assault in the fourth degree and Heidi was charged with domestic violence assault in the fourth degree. They each pled guilty in exchange for a deferred sentence; the charges were later dismissed.

On July 28, 2000, the parties had an argument during which Heidi broke at least one dish and Michael called 911. Heidi was arrested and charged with

---

[2]We discuss only the incidents that Michael refers to in his brief as supporting his proposed finding of a history of acts of domestic violence.

domestic violence malicious mischief in the third degree and violation of a protection order. According to the police report, both parties violated protection orders. The record shows that Heidi pled guilty in exchange for a deferred sentence and the charges were later dismissed.

Another incident occurred in August 2009, when the family attended a festival together. The couple's daughter K.G., who was nine years old at the time, started acting out. Heidi grabbed K.G. by the arm and pulled her by the hair toward the campsite.

In 2011, during an altercation between the parties, Michael claimed that after he went into the bathroom and locked the door, Heidi kicked in the door.

On June 14, 2012, Heidi took the children to Moses Lake and filed for dissolution in Grant County Superior Court. On June 27, 2012, Michael moved for a change of venue to King County Superior Court. The court granted the motion and ordered that the children be returned to King County on June 29, 2012. Temporary orders were entered on August 2, 2012, implementing a 50/50 residential schedule if Heidi moved back to King County. Soon thereafter, Heidi returned to King County with the children.

Throughout 2012 and 2013, numerous motions were filed and multiple hearings were held regarding the parenting plan. Following the trial which began on August 19, 2013, the trial court ordered that the children reside a majority of the time with Heidi and granted her sole decision-making authority. The trial court found that Michael had a history of acts of domestic violence but did not impose

restrictions on his residential time under the exception in RCW 26.09.191(2)(n).

Michael does not appeal this finding but appeals the trial court's failure to find

that Heidi also had a history of acts of domestic violence under RCW 26.09.191

and to restrict her residential time and decision-making authority accordingly.

Michael also appeals the trial court's valuation of his drum-making business and

its subsequent distribution of marital property.[3]

## DISCUSSION

### History of Acts of Domestic Violence

RCW 26.09.191 requires the trial court to restrict a parent's residential

time with a child if the court finds that the parent has engaged in "a history of acts

of domestic violence." RCW 26.09.191(2)(a)(iii). "Domestic violence" under

chapter 26.50 RCW means "Physical harm, bodily injury, assault, or the infliction

of fear of imminent physical harm, bodily injury or assault, between family or

household members; . . . ." RCW 26.50.010(1)(a). "Family or household

members" means spouses, domestic partners, former spouses, former domestic

partners, . . ." RCW 26.50.010(2).

While RCW 26.09.191 does not define "a history of acts of domestic

violence," the phrase excludes "isolated, de minimus incidents which could

technically be defined as domestic violence." In re Marriage of C.M.C., 87 Wn.

---

[3] Michael also moved to strike Heidi's Appendices C, E, F, G, and H because they had not been properly made part of the record on appeal. Michael's own Appendices A and B were also not made part of the record. We therefore decline to consider both parties' Appendices because they were submitted in violation of RAP 10.3(a)(8).

App. 84, 88, 940 P.2d 669 (1997). Mere accusations, without proof, are not sufficient to invoke the restrictions under RCW 26.09.191. Caven v. Caven, 136 Wn.2d 800, 810, 966 P.2d 1247 (1998).

Here, the trial court found that:

Although both parties engaged in violence over the course of the marriage, the father has engaged in a history of acts of domestic violence as defined by the state statute, RCW 26.50.010(1). Clerk's Papers (CP) at 1174.

The mother has engaged in inappropriate social behaviors, including verbally lashing out at the father and his extended family in front of the children. Her behavior is not domestic violence. It is behavior in need of regulation, which should be accomplished through the therapy required herein. CP at 1175.

There are no parenting deficiencies on the mother's part, provided that she deals with the issues of her emotional regulation. CP at 1177.

Michael claims that the trial court erred when it failed to find that Heidi engaged in acts of domestic violence as defined in RCW 26.50.010. He cites in particular the five incidents discussed above:

(1) The August 1999 domestic violence protection order that was entered against Heidi (DVPO);

(2) The May 2000 brewery fight where both he and Heidi fought with Heidi's brother (brewery incident);

(3) The July 2000 argument where Heidi broke a dish (dish incident);

(4) The 2009 incident where Heidi pulled her daughter's hair (hair-pulling incident);

(5) The 2011 argument where Heidi kicked in the bathroom door (bathroom door incident).

He further argues that had the trial court properly found these incidents to be acts of domestic violence, then it necessarily would have found that Heidi also engaged in a history of such acts under RCW 26.09.191. He challenges the trial court's legal conclusion and findings of fact, claiming that they are not supported by the evidence in the record.

When the trial court has weighed the evidence, we review the trial court's challenged findings of fact for substantial evidence. In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007) review denied, 176 Wn.2d 1012, 297 P.3d 706 (2013). Substantial evidence is a sufficient quantity of evidence to persuade a fair-minded, rational person that the finding is true. Id. When substantial evidence supports the findings of fact, we determine whether the findings of fact support the trial court's conclusions of law. Id. We review conclusions of law de novo. In re Marriage of Herridge, 169 Wn. App. 290, 297, 279 P.3d 956 (2012). In this case, the trial court concluded that Heidi's conduct did not constitute a history of domestic violence. Thus, the question presented is whether this conclusion is supported by the trial court's findings and whether they, in turn, are supported by substantial evidence.

We disagree with Michael's premise that had the trial court determined that the five incidents complained of constituted domestic violence, it necessarily would have found a history of acts of domestic violence. The term "history of acts of domestic violence" was intended to exclude isolated, de minimis incidents which could technically be defined as domestic violence. In re C.M.C., 87 Wn.

6

App. at 88. Here, there were five identified incidents scattered over a period of fourteen years, none of which appear to have resulted in any significant physical injury. It would have been well within the trial court's discretion to determine these incidents to be isolated and/or de minimis.

Furthermore, the record reveals substantial evidence supporting the trial court's conclusion that, in their totality, Heidi's acts did not rise to the level of a history of acts of domestic violence. Michael is correct that the DVPO entered against Heidi in 1999 is a judicial finding that an act of domestic violence was committed. In addition, the brewery incident in May 2000 technically fell within the definition of domestic violence because the altercation involved Heidi's brother and the use of a chair, from which it may be inferred that the assault caused some bodily injury. But significantly, because the incident was unrelated to the relationship between Heidi and Michael, it is at best unclear whether it reflected a history of acts of domestic violence as to them.

As to the dish and bathroom door incidents, regardless of the domestic violence designation attached to the charges that resulted from these events, the parties disputed the facts in their testimony before the trial court. Regarding the dish incident, Heidi testified that the parties were arguing while she was doing dishes and one of them slipped from her hand, while Michael testified that she threw multiple dishes on the ground and jumped on them. Regarding the bathroom door incident, Michael testified he was in the bathroom when Heidi kicked the door and that he feared for his physical safety. While Heidi admitted to

7

kicking the door, she did not testify that Michael was in the bathroom at the time. We defer to the fact finder on witness credibility and the persuasiveness of the evidence. In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). Thus, it was within the trial court's discretion to determine whether Heidi's acts in these instances caused physical harm, bodily injury, assault, or the reasonable fear of such and thereby met the statutory definition of domestic violence.

While the trial court did not make specific findings about these particular incidents, it is evident that the trial court considered Heidi the more credible of the two. It rejected Michael's assertions that Heidi was the aggressor in these confrontations and that Heidi had placed him in fear of injury or had caused him injury. Instead it found that Michael "was the aggressor in the incidents of violence," that "[h]e injured her," and that "[h]e caused her to be fearful." CP at 1174. The court further found Michael's testimony regarding his marijuana business and his financial dealings incredible and accepted Heidi's testimony on these subjects.

Michael also offered as evidence of domestic violence the incident at the festival in August 2009, in which it was alleged that Heidi grabbed K.G. by the arm and pulled her hair. In its oral ruling, the trial court found that "Ms. Goude did, in fact pull [her daughter] by the hair one night in the campsite." Verbatim Report of Proceedings (VRP) (9/12/13) at 1760. Although the record does not show that the incident resulted in physical harm, bodily injury, or infliction of fear of imminent physical harm, it could technically be considered an "assault" and

8

thus fall within the definition of "domestic violence" under RCW 26.50.010(1). But the trial court evaluated the incident within the context of Heidi's conduct as a whole, and found that while it was one of many examples of "inappropriate social behavior by Ms. Goude," none of it was "assaultive." VRP (9/12/13) at 1762.

We conclude that substantial evidence supports the trial court's finding that Heidi's "behavior is not domestic violence." CP at 1175.[4] The finding does not properly include the DVPO incident because the order constituted a judicial finding of domestic violence as to Heidi. But the trial court's finding regarding the remaining four incidents cited by Michael is well supported by the evidence. Furthermore, a single incident of domestic violence, occurring well over a decade before trial, is ample support for the trial court's conclusion that, as to Heidi, there was no history of acts of domestic violence.

We further note that over the eight-day trial, the court heard from both parties at length and from multiple witnesses, including domestic violence experts. The allegations of domestic violence were fully aired on both sides. The trial court found that Heidi's behavior was not domestic violence, but rather was rooted in response to Michael's physical violence towards her and "a pattern of emotional abuse and ... tactics of power and control over [her]. This included

---

[4]Michael also argues that the trial court should have found a history of acts of domestic violence because Heidi failed to submit evidence that she would not re-engage in abusive acts or domestic violence, or that the children would not be further harmed by ... such conduct under RCW 26.09.191(2)(n). Brief of Appellant at 28-29. This is incorrect. In order for the statutory exception in RCW 26.09.191(2)(n) to apply, the trial court would have had to find an initial history of acts of domestic violence. The trial court did not find such history and Heidi would therefore not be required to submit evidence that harmful or abusive conduct would not recur.

keeping her from accessing money and finances, asking her parents to keep money from her, and threats to take the children." CP at 1174. Whether a history of acts of domestic violence has been proven is not merely a matter of checking the boxes against RCW 26.50.010, but instead requires consideration of the totality of the circumstances of the affected relationships. The trial court did that in this case. Although the trial court's findings were not set forth with great particularity, our review of the record discloses that the conclusion that Heidi did not engage in a history of acts of domestic violence is supported by the court's findings which are, in turn, supported by substantial evidence.[5]

<u>Physical Abuse of a Child</u>

RCW 26.09.191(2)(a)(ii) requires the limitation of a parent's residential time if it is found that a parent has engaged in ... physical, ... abuse of a child.'" Michael alleges that the trial court should have found that Heidi engaged in "'physical ... abuse of a child" because, in his words, "the trial court expressly found that [Heidi] pulled the oldest child's hair and lifted her off the ground." Br. of Appellant at 27-28. Michael misstates the trial court's actual finding, which was only that Heidi "pull[ed] her [daughter] by the hair." VRP (9/12/13) at 1761. The trial court also found that her behavior was "'not such that [the court]

_____

[5]Michael also contends that the trial court made a "superfluous finding" that he was "'the aggressor,'" which he does not dispute. Brief of Appellant at 20. He argues that the trial court incorrectly used that determination to preclude a finding that Heidi had a history of acts of domestic violence. This argument is without merit. The findings of fact only refer to Michael as the aggressor in reference to his history of domestic violence and in assessing his credibility. The trial court did not, as Michael suggests, rely on its finding that he was the "aggressor" to ipso facto conclude that Heidi did not have a history of domestic violence.

categorize[s] it as domestic violence that would be limited – or required that there be limitations placed upon her in her parenting.'" VRP (9/12/13) at 1763. The record does not show that the single incident rose to the level of "physical ... abuse of a child."[6] RCW 26.09.191(2)(a)(ii).

### Residential Placement and Parental Decision-Making

Because we affirm the trial court's finding that Heidi neither engaged in a history of acts of domestic violence nor committed physical abuse of a child, we also affirm its decisions regarding the residential schedule and parental decision-making. A trial court has broad discretion when crafting a parenting plan, and we review its decision for an abuse of discretion. Caven, 136 Wn.2d at 806. A trial court abuses its discretion when its decision is manifestly unreasonable or made on untenable grounds or for untenable reasons. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

If a parent has engaged in "physical, sexual, or a pattern of emotional abuse of a child," or "a history of acts of domestic violence as defined in RCW 26.09.191(b)(c)," the court is required to limit that parent's residential time with the child, unless an exception applies, and cannot require mutual decision-making. RCW 26.09.191(2)(a). A trial court may not impose these limitations or restrictions in a parenting plan in the absence of express findings under RCW 26.09.191. In re Marriage of Katare, 125 Wn. App. 813, 826, 105 P.3d 44 (2004).

---

[6]Because the trial court did not find that Heidi had a history of acts of domestic violence or committed abuse of a child, there is no need to address Michael's argument that the trial court erred by entering a parenting plan that did not impose mandatory restrictions on Heidi.

Without making the requisite findings of domestic violence or physical abuse, the trial court could not restrict Heidi's time or decision-making ability. The trial court was prohibited from ordering mutual decision-making under RCW 26.09.191(1) because it found that Michael had engaged in a history of acts of domestic violence. We find no error in the trial court's decisions regarding residential placement and parental decision-making.

## Valuation of Business

A court has broad discretion when valuing property in a dissolution action and its valuation will not be reversed on appeal absent a manifest abuse of discretion. In re Marriage of Gillespie, 89 Wn. App. 390, 403, 948 P.2d 1338 (1997). This court leaves valuation "to the sound discretion of the trial court, after hearing any additional evidence that the trial court may deem relevant and material to the valuation of the [property], and after both parties have had the opportunity to reflect upon and argue all the relevant factors." In re Marriage of Harrington, 85 Wn. App. 613, 630, 935 P.2d 1357 (1997).

Michael contends that trial court erred in assigning an enterprise value of $25,000 to his drum-making business. He argues that the business's only value is the $2,000-$2,500 that he claimed he had in inventory, and the additional assigned value came from the trial court's assessment of "intangible goodwill." Brief of Appellant at 36-37. According to him, the trial court erred in adding this amount to the value of the business without engaging in the accepted valuation methods for intangible goodwill.

The value of professional goodwill is a question of fact, and "[o]ne or more of the accepted methods of valuation must be employed," to estimate its value. In re Marriage of Hall, 103 Wn.2d 236, 243, 692 P.2d 175 (1984). A trial court must "state on the record which factors and method were used in reaching its finding." Id. at 247. Here, however, the trial court made no finding of goodwill in Michael's drum business and estimated its value based solely on the limited evidence presented.

Heidi submitted an estimate of $25,000 for the business's value. See Exhibit 256. She testified that Exhibit 256 was a "fair market value of the community property that they had." VRP (8/29/13) at 1630. Considering the assets in totality, the trial court found that Michael had received about $35,000 worth and Heidi had received about $7500 worth. The record contains some additional evidence of the business's value, but Michael's own testimony suggested a value well over his estimate of $2,000 to $2,500. He testified that he would sell each of his drums for "a hundred dollars to $800." VRP (8/21/13) at 656. At the time of trial he estimated that he had "around 20 to 25 drums currently in [his] inventory." Id. at 656-57. He also testified that on "a good month," he could have as much as $7-$10,000 in sales of drums. Id. at 659.

The trial court found that Michael "[did]n't have all of his records because rats ate them. He ha[d] tax returns, but the tax returns are only based on what he tells the IRS. And frankly, because so much of his business is done in cash, there is inability – or lack of ability for the IRS really to confirm that." VRP

13

(9/12/13) at 1780. The trial court determined that "[t]o the extent there are questions ... the inferences need to be made against Mr. Goude because of the lack of records." Id. at 1781.

Michael cannot dispute Heidi's valuation on appeal when he failed to provide any evidence of the business's value,[7] aside from his estimate of inventory, which he later contradicted. The trial court did not include any goodwill in its valuation and therefore did not need to set forth any factors or method used to value goodwill. Based on the evidence presented, the trial court acted within its discretion when it assigned a value of $25,000 to Michael's drum-making business.

## Attorneys' Fees

Both parties ask for fees under RAP 18.1(a) and RCW 26.09.140. Under these statutes, we may award legal fees to a party in a marital dissolution proceeding after "considering the financial resources of both parties." RCW 26.09.140. An appellate court has discretion to order a party to pay the cost of maintaining the appeal, attorneys' fees, and statutory costs. Id. The court will consider the arguable merit of the issues on appeal and the financial resources of the respective parties. Johnson v. Johnson, 107 Wn. App. 500, 504, 27 P.3d

---

[7]The trial court admitted Michael's "attempt at a profit/loss statement" for 2012, but it was not part of the record submitted on appeal. VRP (8/26/13) at 1118. Michael also submitted a list of assets and liabilities, but again, this list was not made part of the record on appeal. He testified that Heidi took about half the value of the total value of personal property that they had. Michael also submitted a few invoices from January and February 2012, with the revenues and expenses, but they were not part of the record on appeal.

No. 71240-3-I/15

654 (2001). Exercising our discretion, we decline to award fees to either party on appeal.

Affirmed.

WE CONCUR:

Spearman, C.J.

Appelwick, J.

Becker, J.