# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>BENJAMIN ELLISON,<br><br>      Appellant,<br><br>and<br><br>NOELLE CELESTE BERRYMAN,<br><br>      Respondent. | No. 87236-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Benjamin Ellison appeals the trial court's order distributing property after a bench trial in his dissolution of marriage proceeding from his former spouse, Noelle Berryman.  We affirm the trial court's decision, but remand for the trial court to address an account that, on the record before us, does not appear to have been distributed by the trial court.

I

Benjamin Ellison and Noelle Berryman, both practicing attorneys in Washington, married in 2014.  They had two children before they separated in September 2021.

After collaborative mediation to settle the dissolution failed, Ellison filed a petition for dissolution in King County Superior Court in February 2023.  The matter proceeded to a four day bench trial in June and July 2024.  Trial focused on division of the parties' property, as the parties had settled parenting plan issues prior to

trial. On August 2, 2024, the trial court held a presentation hearing before final orders were entered.

On August 23, 2024, the trial court entered its final orders, including the final divorce order, final child support order, agreed parenting plan, and findings and conclusions about a marriage. The court granted Ellison a 55 percent share of the community assets to reflect both an asset award in lieu of spousal maintenance and any discounts in recouping the accounts receivable from Ellison's business that were awarded to him. As part of the findings and conclusions about a marriage, the trial court included an assets and liabilities spreadsheet detailing the valuation and division of each of the parties' assets and liabilities.

Both parties moved for reconsideration. The trial court denied Ellison's motion as untimely and granted Berryman's motion in part.

Ellison appeals.

II

We review the trial court's dissolution orders, including property division, for abuse of discretion. In re Marriage of MacDonald, 104 Wn.2d 745, 750-51, 709 P.2d 1196 (1985). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. In re Marriage of Fiorito, 112 Wn. App. 657, 663-64, 50 P.3d 298 (2002).

Findings of fact are reviewed for substantial evidence. In re Marriage of Watanabe, 199 Wn.2d 342, 348, 506 P.3d 630 (2022). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). In

determining the sufficiency of evidence, an appellate court need only consider evidence favorable to the prevailing party. Id. Unchallenged findings of fact are accepted as true on appeal. In re Marriage of Laidlaw, 2 Wn. App. 2d 381, 386, 409 P.3d 1184 (2018). To challenge a finding of fact, RAP 10.3(g) requires that "[a] separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number."

We defer to the trier of fact for resolution of conflicting testimony, evaluation of the evidence's persuasiveness, and assessment of the witnesses' credibility. In re Parentage of G.W.-F., 170 Wn. App. 631, 637, 285 P.3d 208 (2012).

A

Ellison argues on appeal, as he did at trial, that Berryman had sole access to community funds in an account at Synchrony Bank after their separation and that she did not adequately account for her use of this community property. Ellison argues that after separation Berryman drained the account by spending the community property for her own benefit with no benefit to him.

The trial court found that Berryman did not drain the Synchrony account of their community property, as Ellison claims. The trial court issued specific findings that Berryman credibly testified and provided account records that traced her expenditures:

> **[Berryman] adequately traced post-separation expenditures from any community funds to community costs**
>
> 31.  [Ellison] alleged that the mother "drained" her Synchrony account, which had community funds, during the collaborative divorce process and through to trial.

3

32    Per her credible testimony, [Berryman] established an account with Synchrony where her periodic bonuses could be deposited, because this account had a higher interest rate. Beginning in 2019, [Berryman] transferred from this account funds to the parties' joint account to pay for such community projects as a kitchen remodel. She also regularly paid from the Synchrony account toward [A.'s] 529 college fund. Post-separation, [Berryman] continued to pay from the Synchrony account a variety of community expenses, including school tuition, [guardian ad litem] fees, federal taxes, and home repairs.

33.   At trial, [Berryman] testified credibly regarding the extensive series of transfers, from 2019 to April 2024, as illustrated in Exhibit 266. The Court finds that this testimony, supported by the account records, adequately traced the mother's expenditures. The Court rejects the father's claim that the mother "drained" the Synchrony account post-separation for her personal benefit.

Ellison fails to assign error to these findings as required by RAP 10.3(g), which requires a separate assignment of error for each challenged finding of fact with reference to the finding by number. Unchallenged findings of fact are accepted as true on appeal. Laidlaw, 2 Wn. App. 2d at 386. Thus, we consider the trial court's findings quoted above true.

Even if we address Ellison's general challenge to Berryman's tracing of the community funds in the Synchrony account despite his failure to adhere to RAP 10.3(g), substantial evidence supports the trial court's finding that Berryman adequately traced postseparation expenditures from any community funds to community expenditures. Berryman submitted Synchrony Bank and Chase Bank account statements detailing relevant expenditures and transfers. Berryman also testified at trial that she spent the Synchrony bank account money on community expenses, including the renovation of the family home, the family home mortgage,

federal taxes filed when the couple were married, their son's private school tuition, guardian ad litem payments, and funding a 529 education account for one of their children. We defer to the trial court's finding quoted above that Berryman's testimony on this issue was credible. G.W.-F., 170 Wn. App. at 637.

Relatedly, Ellison argues that the trial court erred in admitting into evidence exhibit 266, referenced in the court's findings above. Exhibit 266 was described as a demonstrative spreadsheet created by Berryman accounting for her use of the Synchrony Bank account funds. Ellison's counsel explicitly stated that he did *not* object when this exhibit was admitted at trial for demonstrative purposes:

> MS. PETERSON [Berryman's counsel]: Actually, Your Honor, I would like to have Exhibit 266 admitted for demonstrative purposes.
>
> THE COURT: Any objection?
>
> MR. ANDERSON [Ellison's counsel]: I do, but I don't think any will carry the day, so go ahead.
>
> THE COURT: Well, you have to articulate an objection, so I'll just take that as a no.
>
> MR. ANDERSON: I didn't —
>
> THE COURT: What's that? Mr. Anderson, I need some clarity. Do you have an objection or not?
>
> MR. ANDERSON: I do not.
>
> THE COURT: Okay. 266 is admitted for demonstrative purposes.
>
> MS. PETERSON: Thank you, Your Honor.

An objection is necessary to preserve an evidentiary issue for appellate review. RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."); Hernandez v. Stender, 182 Wn. App. 52,

5

61, 358 P.3d 1169 (2014). Ellison cites a later objection that he made to exhibits 267-69, but this objection cannot serve as an objection to exhibit 266, which had already been admitted without objection for demonstrative purposes. We decline to review Ellison's claim that exhibit 266 was erroneously admitted for demonstrative purposes because he did not object to the admission of this exhibit for that purpose.

B

Ellison argues that the trial court's $472,000.00 valuation of the accounts receivable of his solo bankruptcy law practice, Salish Sea Legal PLLC, is not supported by substantial evidence. He argues, as he did at trial, that this number should be reduced because likely not all of these accounts will be collected, and he will have to pay business overhead costs to collect and taxes.

The court issued findings supporting its valuation of Salish Sea Legal PLLC and explaining why Ellison had not met his burden to show a reduced valuation:

> *Valuation of Salish Sea, Ltd., the [Ellison's] bankruptcy law practice and business*
>
> 34. During the marriage, [Ellison] left his job at Cairncross & Hempelman and opened a solo practice called Salish Sea Legal, PLLC ("Salish Sea"), primarily representing debtors in bankruptcy. [Ellison] testified that the nature of the business, and the clients, did not always result in predictable income because debtors did not typically have cash to pay attorney's fees and sometimes the father as the bankruptcy attorney had to obtain court approval for fees.
>
> 35. [Ellison's] "preliminary" Profit and Loss Statement reflected for 2021 a sum of $94,053.42, and a sum of $98,461.09 for the previous year (2020). Ex. 44. By 2022, [Ellison's] profit and

loss statement reflected $225,666.02 in net income.  Ex. 45. The parties have yet to file their 2023 tax return.

36.     In a self-[de]scribed "attempt to save the marriage," [Ellison] had, in the fall of 2021, assessed the value of the firm's [accounts receivable (AR)] at $500,000.  *See* Ex. 218.  At this time, [Ellison] did not indicate there would be significant work to recoup this sum; he aimed to "get $200,000 in the next 60 days." *Id.* In September 2022, during the collaborative divorce process, [Ellison] crudely sketched out a figure of $472,000 for his gross AR attributable to 2021 (prior to separation).  Ex. 42.

37.     The parties agree that as of January 2022, Salish Sea had AR in a gross amount of $472,000.  [Ellison] conceded this at trial. The parties also agree this is the main asset of the business, which otherwise lacks equipment, real estate, or capital reserves.  [Berryman] contends the Court should value the business at $472,000, which is community property, and assign that business asset to [Ellison] in the overall asset/debt distribution.

38.     For purposes of trial, [Ellison] worked up a "waterfall analysis" of all the work and costs associated with recouping actual cash from the pre-separation AR.  By the deducting amounts characterized as "bad debt," expense for "paralegal," and other "costs to collect AR," [Ellison] estimated that the net (discounted) value for the gross AR of $472,000 was $75,278. Ex. 66.  Consistent with the "waterfall analysis," [Ellison] testified that the gross value of AR must be discounted because he would have to pay his paralegal for efforts to collect and expend money otherwise to collect from his clients. He also testified that certain clients had agreements that capped the attorney's fees at less than the gross value worked.  *See* Ex. 73 (court petition for fees, with accounting). Notwithstanding "the waterfall analysis" that from the AR the "BAE [Ellison] Distribution Total [was] $75,278," Ex. 66, at trial [Ellison] testified from his analysis that his income share would be $214,000 from the AR.

39.     [Berryman] criticized this approach as uncredible ("literally done on the back of a napkin") because it lacked underlying supporting documentation to support [Ellison's] calculations. [Berryman] also decries [Ellison's] "mismanagement" of the business, arguing that [Ellison] has the burden of proof regarding any discounted value of the gross AR, and that the

Court should not credit his unsupported, self-serving testimony. Finally, [Berryman] contends that it is unfair to discount the AR for purposes of the dissolution, because if the Court assigns a value of less than $472,000, [Ellison] will still retain the 8-10 separate accounts receivable aggregate and always be able to await payment or pursue collection. [Berryman] argues, in the event the Court discounted the AR significantly, that post-dissolution [Ellison] would be incentivized to pursue collection, notwithstanding his waterfall analysis here, and thereby recoup actual cash value he claimed for purposes of trial was not available. By contrast, [Berryman] has no control over whether and to what extent [Ellison] can collect against the gross AR.

40. The trial court may arrive at the valuation of a business, based on competing "value[s] placed upon the property [that] was greater than that given by one witness and less than that presented by another witness," as long as the trial court explains its reasoning. [In re Marriage of] *Sedlock,* 69 Wn. App. [484,] 491[, 849 P.2d 1243 (1993)] (internal quotation marks and citation omitted).

41. The Court must begin with the premise that the AR is worth less than its maximum, uncollected value of $472,000 but at least $75,278 or $214,000 conceded by [Ellison]. [Ellison] estimated that various numbers of hours (both attorney and paralegal) would be required to collect on the 8-10 specific client accounts in question, thereby reducing the expected net amount. However, except for the . . . accounting attached to a fee petition to the U.S. Bankruptcy Court (*see* Ex. 73), [Ellison] failed to show hours worked to collect fees historically, or time records related to the specific AR in question anywhere in the 2022 to 2024 time frame that indicated attorney or paralegal time dedicated to AR collection. As to any testimony that some of the clients' accounts reflected both pre- and post-separation fee receipts, [Ellison] also provided no supporting documentation. Record keeping of client accounts is routine if not ethically required in law firms. [Ellison] alone is in a position to keep such records and access them; yet for this dissolution case no such records were available . . . . Likewise with the "Other Vendor/Business Expense" ($24,719), "Costs to Collect AR" ($58,080), and "Bad Debt" ($127,972), it is unclear why and how these costs are necessary to recoup against the aggregated AR ($472,000), or why the debt was "bad" and thus allegedly uncollectible. The Court did not find [Ellison's]

8

testimony to be coherent on these points, and it was sometimes contradictory, and documentation that might have clarified and substantiated [his] claims was lacking.

42.     The Court finds that [Ellison] has not met his burden by a preponderance to show that the AR valuation is $75,278, or even $214,000.  Aside from the documentation and proof problems canvassed above, [Ellison] also has no persuasive response to [Berryman's] point that the $472,000 in AR remains collectible in practice regardless of whatever the discounted value the Court might assign to it.  While [Ellison] arguably may not recoup everything, the value of uncollected AR might trickle or pour in depending on the father's efforts and circumstances beyond [Berryman's] control.  For these reasons, it is unfair to discount the value of the AR prior to allocation.

43.     The Court acknowledges that some inequity would attach from assigning the father the AR at an undiscounted rate of $472,000.  But the father has not provided the Court with credible evidence to valuate that AR at a specific figure lower than that gross amount.  The Court will therefore assign a value of $472,000 to the AR and redress any inequity by giving the father a slightly disproportionate share of the overall marital assets as discussed below.

(Some alterations in original.)

Again, Ellison fails to strictly comply with the assignment of error procedures required by RAP 10.3(g); they could be considered true on appeal.

Even if we accept Ellison's general challenge, the record provides substantial evidence supporting the trial court's valuation.  Ellison and Berryman agreed that as of January 2022, Salish Sea had accounts receivable in a gross amount of $472,000, as supported by the calculations Ellison submitted to the trial court reflecting this same amount.  We defer to the trial court's determination quoted above that Ellison did not provide the trial court with credible evidence to value the accounts receivable at a specific figure lower than the gross amount, and

that Ellison's testimony on certain points was not coherent, sometimes contradictory, and lacking in supporting documentation. As a result, because the superior court's findings are supported by substantial evidence, and because we do not review its credibility determinations, Ellison's challenge to the valuation of his business's accounts receivables fails.

C

Ellison argues that the trial court erred by including his separate property 401(k) account twice in its assets and liabilities spreadsheet. Ellison argues that the spreadsheet entries for one account, dated September 30, 2023 and valued at $189,104, and another account with a different account number, dated June 20, 2022 and valued at $144.954, are the same account at different points in time.[1]

However, Ellison fails to provide any showing ascertainable in this court that these separate account numbers are in fact the same account. As appellant, Ellison has the burden to provide an adequate record to establish error. City of Spokane v. Neff, 152 Wn.2d 85, 91, 93 P.3d 158 (2004); In re Det. of Halgren, 156 Wn.2d 795, 804, 132 P.3d 714 (2006). Ellison points to a bank statement admitted at trial showing the balance of the latter account as $144,918.56, which approximately matches the valuation of the latter account on the trial court's spreadsheet. He also points to his own testimony at trial that one of his individual retirement account accounts containing about $145,000 was his separate property because it contained funds from a 401(k) he received from a job entirely before his

---

[1] We omit the account numbers to protect the parties' privacy. The court has reviewed the line items in question.

marriage to Berryman, and that a chart submitted by Berryman had incorrectly listed this as community property.

However, Ellison fails to point to any evidence regarding the former account or, most crucially, any evidence that these two accounts are the same account despite the different account numbers. To the extent of the record before us, Ellison has failed to demonstrate a basis for appellate relief.

D

Ellison argues that the court should have valued accounts containing Berryman's 401(k) retirement plan, stock options, and restricted stock options as of the date the property division would become effective in 2024 rather than the date of separation in September 2021.

A trial court has broad discretion in valuing property in a dissolution action, and its valuation will not be reversed on appeal absent a manifest abuse of discretion. See In re Marriage of Gillespie, 89 Wn. App. 390, 403, 948 P.2d 1338 (1997). When the court's valuation is within the scope of the evidence, the court has not abused its discretion. In re Marriage of Mathews, 70 Wn. App. 116, 122, 853 P.2d 462 (1993), abrogated on other grounds by In re Marriage of Wilcox, 3 Wn.3d 507, 553 P.3d 614 (2024). In Washington, a court has discretion to determine the appropriate valuation date for each asset. In re Marriage of Hurd, 69 Wn. App. 38, 46, 848 P.2d 185 (1993); Lucker v. Lucker, 71 Wn.2d 165, 167-68, 426 P.2d 981 (1967).

Ellison cites RCW 26.09.080(4), in support of his argument that the trial court should have valued these accounts as of the time the property division would

become effective in 2024. RCW 26.09.080(4) states that one of the factors the court must consider in disposing of property, which is "[t]he economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time." This statute does not address the issue of valuation date of specific assets, but rather, as a separate issue, requires the trial court to take into account the economic circumstances of each spouse at the time the property is divided when determining a just and equitable disposition of property and liabilities.

Ellison fails to address case law that cites this statute and still affirms a trial court's discretion to determine the valuation date for each asset. E.g., Hurd, 69 Wn. App. at 46; Lucker, 71 Wn.2d at 167-68. Ellison does not provide any compelling reason he should be entitled to profit from Berryman's 401(k) retirement plan and stock options after the marital community ended on the date of separation. The trial court determined the date of separation was September 2021. We accept this as true because Ellison does not challenge it on appeal. The trial court did not abuse its discretion in valuing Berryman's 401(k) retirement plan and stock options as of that date of separation.

Specifically regarding the restricted stock options, Ellison argues that the empty line for the restricted stock options on the Asset and Liabilities spreadsheet, labeled "W. Fidelity [redacted account number] RSU + ESPP," is blank because of a technology error where the trial court's conversion of the spreadsheet on the

computer cut off the far column indicating that this account was community property to be divided by an accountant based on separation date. The superior court's worksheet dividing the parties' assets assigns no value to this account. Despite this, Berryman clearly testified at trial that it had value, testifying,

> Q    Okay. And now we're into this Fidelity RSU and ESPP account, and there's no values in there, and it says, "CP portion to be equally divided by a CPA based on separation date," and it looks like, according to—and it looks like you're referencing the Bulicek[2] case. Is that what your request is to the Court?
>
> A    That's my request to the Court, yes. Some of this was pre-date of separation, and some of it is post, and I think once we get that date, someone will be able to do the figures, who is more learned in areas than me and—yes.

Later in her testimony, Berryman seemed to request that she be allocated this account. Berryman also submitted bank account statements reflecting a significant balance in this account.

However, to the extent of this court's record, we cannot tell that this property was distributed. Although Berryman argues in her brief that "[t]he record shows the trial court considered the RSU stock awards in its overall balancing of the estate," in support of this she cites to parts of the record containing no reference to this account. Further, we do not see that the account was addressed in the court's findings, nor does it appear to be reflected in the total amounts stated as being distributed to the parties in the court's assets and liabilities spreadsheet.

---

[2] See In re Marriage of Bulicek, 59 Wn. App. 630, 636-38, 800 P.2d 394 (1990).

The trial court must dispose of all assets brought before it because a party to a marriage dissolution has the right to have his or her interest in the property definitely and finally determined. In re Marriage of Soriano, 31 Wn. App. 432, 437, 643 P.2d 450 (1982). If property is left undisposed, this error requires a remand so the trial court may finally dispose of the property of the parties. Id. at 437-38.

We therefore remand the issue of the distribution of the restricted stock options. On remand, the superior court should clarify if the account was distributed. And, if it was not distributed, the court should order its distribution with consideration to ensure the ultimate distribution remains equitable.

E

Ellison argues the trial court failed to include the value of the 529 education account for the parties' son on the assets and liabilities spreadsheet when it was undisputed that the account was funded with community property, and the trial court ordered him to pay 45 percent of the cost of private Catholic school for the children. The trial court ordered the 529 account to be rolled over into a new account solely in Berryman's name consistent with her sole decision-making in the parenting plan, but did not include the account on the assets and liabilities spreadsheet. At trial, the parties disputed the appropriate use of the account. Berryman stated the account should be reserved for postsecondary education, while Ellison sought to have it available for current private school tuition. The superior court's disposition of the account in the control of the parent with sole decision-making concerning educational matters is an appropriate disposition.

14

Regardless of whether Ellison's argument is characterized as his being "excluded from a joint asset that can satisfy" his son's educational costs or his alternate proposal to "split" the account and allow each parent to direct use of a portion of the funds, in either case the issue is the best use of those funds to provide for their son's education, an issue within Berryman's sole decision-making under the parenting plan. We find no abuse of discretion in the superior court's treatment of the account outside of the spreadsheet allocating the parents' assets. The superior court's order implicitly accepted Berryman's arguments at trial, and "strict particularity" is not required in listing assets to be distributed. In re Marriage of Hadley, 88 Wn.2d 649, 656, 565 P.2d 790 (1977).

F

Berryman requests, in one sentence, an award of fees on appeal, alleging that Ellison's appeal was frivolous, but offers no authority to support such an award. We decline her request for fees. See, e.g., Osborne v. Seymour, 164 Wn. App. 820, 866, 265 P.3d 917 (2011) (requiring "more than a bald request for attorney fees on appeal").

We remand to the trial court to address the distribution of the account stated above, and we otherwise affirm.

Birk, J.

WE CONCUR:

Mann, J.

15